ERNEST WHITTEN, MICHAEL L. BAILEY *v.* STATE OF INDIANA.
[No. 1073S213. Filed August 27, 1975.]

*John F. Davis,* of Evansville, for appellants.

*Theodore L. Sendak,* Attorney General, *John H. Meyers,* Deputy Attorney General, for appellee.

PRENTICE, J.—The defendants (appellants) were convicted in a trial by jury of felony murder (robbery), Acts of 1941, ch. 148, § 1; Ind. Code § 35-13-4-1; Burns § 10-3401. They were both sentenced to life imprisonment. This appeal presents the following issues:

1. Sufficiency of the evidence.

2. Validity of searches of the defendants' automobile.

3. Legality of cross examination of defendants' psychiatrist concerning prior criminal acts and police involvement of the defendants.

4. Admissibility into evidence of police "mug" photographs.

5. Correctness of the trial court's denial of a motion for mistrial following the disclosure by a State's witness of a statement by one of the defendants that he was wanted for another armed robbery.

6. Correctness of the trial court's ruling permitting the court appointed psychiatrist to testify as to a statement made by the defendant, Bailey, during the examination to determine his competency to stand trial.

7. Correctness of an instruction limiting the verdicts to guilty, not guilty or not guilty by reason of insanity.

\* \* \*

ISSUE I. Considering first the charge of insufficiency of the evidence and looking only to the evidence favorable to the State and to the reasonable inferences to be drawn therefrom, we hold that such evidence was sufficient to sustain the verdicts.

The homicide victim operated a business house wherein substantial sums of currency were kept. In addition to the

main entry thereto, such business house also had a side entry off a corridor which it shared with a tavern situated next door. Shortly after the decedent's establishment was opened for afternoon business hours, a waitress in the tavern heard gunshots in the decedent's premises. She went through the common corridor to investigate. In the corridor she encountered the defendant, Whitten, who threatened her with a pistol. She returned to the tavern but re-entered the corridor moments later only to encounter the defendant, Bailey, who pointed a pistol at her and told her to "shut up." He too exited, and as he did so, he dropped a substantial sum of money in the corridor.

Immediately thereafter, the defendants fled at high speed in an automobile, one entering the "get away" vehicle after it had commenced to move. A chase by the police ensued during which the defendants, after stopping the vehicle along side the highway at police command, drove through a cornfield and through fences with the policeman chasing them on foot. Their automobile became stuck in a farm lot, whereupon they abandoned it and subsequently commandeered a nearby resident to drive them away in his utility vehicle. When the police stopped this vehicle, the defendants again fled, this time separating.

Ultimately, Whitten was apprehended where he had taken a family hostage in their home, and Bailey was apprehended in a nearby wooded area where he had attempted to bury the decedent's revolver in the ground. At the time of their capture, both defendants had substantial sums of currency upon their persons. At the scene of the homicide, six hundred and ten dollars in cash was strewn about the room, some upon the counter and some upon the floor. Some of it was underneath the decedent, who was found lying upon the floor.

The defendants, on two occasions, announced to their hostages that they had killed a man. Both defendants were armed when apprehended. Nitrate tests of the defendants disclosed that both had recently fired their guns and ballistics tests dis-

closed that the death shots had been fired from the gun taken from one of the defendants. Both defendants were identified by the hostages and by the waitress who heard the gunshots and saw them exiting from the murder scene.

The defendants cite *Manlove* v. *State,* (1968) 250 Ind. 70, 232 N.E.2d 874, and assert that the only evidence of what, in fact, took place in the decedent's premises was provided by the defendant, Bailey, who testified that he and Whitten went to the decedent's business house to collect money owing from the decedent to Bailey, that decedent refused to pay the debt and that an argument ensued. The defendant further testified that Sheets (the decedent) pushed a burglar alarm button and opened fire upon them before either of them "pulled" their guns. Whitten did not testify.

The circumstantial evidence against the defendants goes far beyond that presented in *Manlove, supra* and *Schusler* v. *State,* (1868) 29 Ind. 394 cited therein, wherein it was stated that "To sustain such a conviction the facts proved must be susceptible of explanation upon no reasonable hypothesis consistent with the innocence of the person charged." The jury was not bound to believe Bailey's version of the killing simply because there was no direct evidence of its falsity.

"The sufficiency test on appeal is not whether or not the verdict is one upon which reasonable minds might differ but rather whether or not there has been a failure of proof by substantial and probative evidence, so that no reasonable man could say that the issue had been proved beyond a reasonable doubt." *Beard* v. *State,* (1975) 262 Ind. 643, 323 N.E.2d 216, 218. It cannot be seriously denied that the evidence above related gives rise to an inference that the defendants were engaged in an act of robbery at the time of the homicide. Such inference is entirely reasonable and is supported by substantial and probative evidence. Even if we were to believe the defendants' version of the encounter with the decedent, we could not override the verdict of the jury in view of the conflicting evidence.

ISSUE II. After the defendants broke arrest and escaped momentarily by driving through the fields, other policemen were summoned and appeared and began a search for them. They came upon the stranded automobile and searched it. Subsequently, the vehicle was removed by the police to the police station, where it was again searched without the formality of a warrant, and evidence obtained in these searches was admitted into evidence.

Defendants would have us exclude the evidence obtained in the searches of the automobile upon authority of *Chimel* v. *California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685, and *Coolidge* v. *New Hampshire*, 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564. *Chimel* was cited for very general language taken from an earlier dissent by Justice Cardozo proscribing exemptions from the constitutional requirement of warrant "* * * without a showing * * * that the exigencies of the situation made that course imperative." In *Coolidge* v. *New Hampshire, supra*, the evidence taken in a warrant for search of the appellant's automobile, after it had been unconstitutionally seized and taken to the police station, was excluded as fruits of the unlawful seizure.

The case at bar offends against neither of the aforementioned cases and is controlled by *Chambers* v. *Maroney*, (1970) 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419, Reh. Den. 400 U.S. 856, 91 S. Ct. 23, 27 L. Ed. 2d 94, and by *Luckett* v. *State*, (1972) 259 Ind. 174, 284 N.E.2d 738. The initial search of the automobile, while it was in the farm lot, and its removal to the police station immediately thereafter were entirely reasonable under the exigent circumstances The subsequent search at the police station was merely a logical continuation of investigative procedure that was lawful in its inception and we see no illegality.

ISSUES III and IV. The defendants both entered pleas of not guilty by reason of insanity. In so doing, they opened

the door to evidence of relevant past behavior, including criminal behavior. *Stamper* v. *State,* (1973) 260 Ind. 211, 294 N.E.2d 609 ; *Young* v. *State,* (1970) 254 Ind. 379, 260 N.E.2d 572. The evidence of prior crimes and criminal charges came in by way of the State's cross examination of the defendants' phychiatrist witness as to what information the defendants had related to him during their examinations. The State was entitled to elicit such information as bearing upon the credibility of the conclusions drawn by the psychiatrist. If incorrect inferences might thereby have been drawn from such line of cross examination, the defendants were at liberty to dispel them.

We have not been informed by the defendants' brief as to the means by which the photographs complained of came into evidence, and the burden of searching the record to ascertain such detail is one we cannot assume. If they were, in fact, "mug shots" as alleged and suggestive of police records, we, nevertheless, perceive no harm in view of the lengthy recitations of prior criminal and police involvement disclosed by cross examination of the defendants' psychiatrist.

ISSUE V. Upon redirect examination of Trooper Laswell, one of the arresting officers, he testified to a statement made by one of the defendants that indicated that he was wanted by the police for an armed robbery in Milwaukee. The defendant moved for a mistrial which was denied, but the court admonished the jury to disregard the testimony. Clearly the statement was inadmissible and under other circumstances might have been highly prejudicial. In view of the overwhelming evidence of the defendants' guilt, however, we do not believe the trial judge erred in denying the mistrial motion. The grant of a mistrial was largely in the discretion of the trial court, and his determination of a motion will not be disturbed except for good cause shown. *Duke* v. *State,* (1968) 249 Ind. 466, 233 N.E.2d 159 ; *White* v. *State,* (1971) 257 Ind. 64, 272 N.E.2d 312. Also, in view of the overwhelming evidence of

guilt and the other substantial evidence of the prior police involvement, it would be difficult indeed for the defendants to demonstrate, from all the circumstances, how they were placed in a position of grave peril by the error. This is their burden. *White* v. *State, supra; Blackburn* v. *State,* (1973) 260 Ind. 5, 291 N.E.2d 686.

ISSUE VI. Doctor Pontaoe was a psychiatrist appointed by the court to examine the defendants as to their competency to stand trial. The examination was conducted prior to the filing of the special plea of insanity. The Doctor, on the occasion of such examinations, advised the defendants that anything they said would not be used against them in a court of law to incriminate them. On cross examination, the prosecutor asked the witness if the defendant, Bailey, had during the examination, told him that he had taken drugs on the day of the crime. The court permitted the witness to answer over the objection that Bailey had been advised by the witness, an agent of the court, that his statements were privileged. His answer, however, was "He did not." We perceive no harm to the defendant from the question and answer.

ISSUE VII. The charge against the defendants was felony murder (robbery). The court instructed the jury that there were no degrees of the crime, and that the defendants must be either convicted of first degree murder or acquitted or found not guilty by reason of insanity. The defendants objected to such instruction upon the ground that it was an improper statement of the law and highly prejudicial, which we consider to be an inadequate objection in view of Ind. R. Tr. P. 51(C). The objection should advise the court in what regard the instruction is improper. The bald statement that it is incorrect or improper is not enlightening to the court.

Further, this issue has not been properly presented to this Court, and we refer counsel to Ind. R. Ap. P. 8.3(A). It is an imposition upon this Court to require it to search the

record to ascertain matters that are required by the rules to be set forth in the briefs.

The defendants have asked us to reconsider our earlier holding that felony murder has no lesser included offenses. This issue was treated under almost identical circumstances in *Hester* v. *State*, (1974) 262 Ind. 284, 315 N.E.2d 351, which was handed down subsequently to the time this case was fully briefed and submitted. We there acknowledged our cognizance of the merits of such issue and stated:

"* * * we are not prepared to say that there can be no conviction of the collateral crime alleged in a charge of felony murder. Should the affidavit or indictment and the evidence warrant a conviction of such collateral offense, an instruction with respect thereto would be proper. But in the case before us, all of the evidence before the jury was that the defendant committed the acts of robbery and murder upon the deceased and that he was guilty as charged, unless he was in fact of unsound mind at the time thereof. For the trial court to have instructed the jury that it could find the defendant not guilty as charged but guilty of robbery, as a lesser included offense, would have been to suggest to them a compromise verdict. Although compromise verdicts doubtlessly are often forthcoming, they are not sanctioned in law and certainly should not be court induced." 315 N.E. 2d 351 at 354.

We find no reversible error, and the judgment of the trial court is affirmed.

Givan, C.J., Arterburn, DeBruler and Hunter, JJ., concur.

NOTE.—Reported at 333 N.E.2d 86.