**Eddie GRIFFIN, Defendant–Appellant,**

**v.**

**STATE of Indiana, Plaintiff–Appellee.**

No. 18S02–9910–CR–505.

Supreme Court of Indiana.

Oct. 1, 1999.

Geoffrey A. Rivers, Joseph P. Hunter, Muncie, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Preston W. Black, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## ON PETITION TO TRANSFER

DICKSON, J.

The defendant-appellant, Eddie Griffin, was convicted of robbery, a class A felony,[1] and conspiracy to commit robbery, a class A felony.[2] The Court of Appeals affirmed. *Griffin v. State*, 692 N.E.2d 468 (Ind.Ct. App.), *reh'g granted in part and denied in part*, 694 N.E.2d 304 (Ind.Ct.App.1998). He seeks transfer on grounds that one or both of his convictions are barred by the principles of double jeopardy and collateral estoppel. In light of our decision today in *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999), we grant transfer.

The defendant's convictions resulted from the second of two trials. In the first trial, he faced charges of robbery, murder, and conspiracy to commit robbery. The jury acquitted him of felony murder but was unable to reach a verdict on the robbery and conspiracy charges, and the trial court declared a mistrial as to these two charges. In the second trial, the jury found the defendant guilty of robbery and conspiracy to commit robbery. The trial court sentenced him to concurrent 30–year sentences on each of these convictions.

The defendant's convictions in his second trial stem from his alleged participation in a series of events with three companions, Joseph Hartman, Shane Craig, and Scott Ransom. According to evidence primarily consisting of the testimony of Craig,[3] in early June of 1993, Hartman, a long-time friend of the defendant, was awaiting sentencing in an unrelated case. Hartman decided to leave town before the sentencing, but he needed money to give effect to his plan. Hartman met with the defendant, Craig, and Ransom and discussed alternative ways to obtain cash so that they could all leave town with Hartman. Finally, a plan was hatched: the four men would arrange to buy a large quantity of marijuana from David Turner, a drug dealer; but rather than buy the marijuana, they would attack Turner and take the drugs from him; and they would then sell the marijuana to provide cash in order to leave town. The defendant suggested that they rob Turner

---

1. Ind.Code § 35–42–5–1 (1988).

2. Ind.Code § 35–41–5–2 (1988).

3. Craig did not testify in person during the second trial, but a transcript of his testimony in the first trial was received in evidence.

at a house owned by the defendant's step-father and mother and sometimes occupied by the defendant and his friends. On June 15, Hartman contacted Turner, indicating that he wanted to purchase ten pounds of marijuana, and arranged to meet Turner at a hotel. Hartman met Turner at the hotel and discussed the drug transaction. Turner and Hartman then went to the house where the defendant, Craig, and Ransom were lying in wait. When Hartman and Turner entered the residence, Craig struck Turner twice on the head with a wooden table leg. Turner's hands were taped behind his back, and the defendant struck Turner with a piece of metal. A plastic bag was placed over Turner's head; the air was squeezed out; and the bag was taped shut, suffocating him. The four men then waited for Turner to die.[4] Subsequently, they discussed how to dispose of Turner's body, and Hartman, Craig, and Ransom dumped the body in a remote field. After selling some of the marijuana, the four men headed west to Fort Collins, Colorado. While in Colorado, the men received by wire more proceeds from the sale of the marijuana. The men also traveled to Texas and then to Florida where they were arrested. The four men were each charged with robbery, murder, and conspiracy to commit robbery.[5]

The defendant asserts (1) that his double jeopardy rights were violated when he was retried on the charges of robbery and conspiracy to commit robbery after he was acquitted on the charge of felony murder, (2) that collateral estoppel barred the relitigation of issues in the second trial that were litigated to a valid, final judgment in the first trial, and (3) that his double jeopardy rights were violated when he was

convicted of both robbery and conspiracy to commit robbery in his second trial.

■ Prohibitions against double jeopardy protect against:

(1) reprosecution for an offense after a defendant has already been convicted of the same offense in a previous prosecution; (2) reprosecution of a defendant after an acquittal; (3) multiple punishments for the same offense in a single trial; (4) reprosecution of a defendant after the conviction has been reversed for insufficient evidence; (5) criminal reprosecution of a defendant in limited circumstances following a previous civil prosecution; (6) reprosecution of a defendant in limited circumstances after a mistrial has been declared.

*Richardson,* 717 N.E.2d at 37 n. 3 (citations omitted). This case presents a complex assortment of double jeopardy and related issues—subsequent prosecution after an acquittal, reprosecution after a mistrial, multiple punishments, and collateral estoppel—implicating the second, third, and sixth of these protections.

### 1. Double Jeopardy and Reprosecution After Acquittal on Felony Murder Charge

■ In his first trial, the defendant was tried for robbery, felony murder by robbery, and conspiracy to commit robbery. Because the first trial resulted in an acquittal on the felony murder charge and mistrials on the robbery and conspiracy charges, the defendant contends that federal double jeopardy jurisprudence[6] pro-

---

4. The coroner ruled that the cause of Turner's death was undetermined homicidal violence and was unable to provide any specific details due to the condition of Turner's body when it was discovered several weeks later.

5. Craig and Ransom pled guilty to robbery, and Hartman was convicted of all three charged offenses.

6. The defendant does not argue that the Indiana Double Jeopardy Clause requires a result different than that reached under federal double jeopardy jurisprudence on this issue.

hibited a second trial on the robbery and conspiracy charges.[7]

■ Federal double jeopardy jurisprudence bars a defendant from being prosecuted for an offense after being acquitted for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–65 (1969) (reiterating that "the Fifth Amendment guarantee against double jeopardy ... protects against a second prosecution for the same offense after acquittal") (citing *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957)); *United States v. Ball*, 163 U.S. 662, 671, 16 S.Ct. 1192, 1195, 41 L.Ed. 300, 303 (1896) ("The verdict of acquittal was final, and could not be reviewed, on error or otherwise, without putting [the defendant] twice in jeopardy, and thereby violating the Constitution."). The U.S. Supreme Court has held that a verdict of acquittal, however erroneous, is an absolute bar to a subsequent prosecution for the same offense. *Green*, 355 U.S. at 188, 78 S.Ct. at 223–24, 2 L.Ed.2d at 204 ("[I]t has long been settled under the Fifth Amendment that a verdict of acquittal is final, ending a defendant's jeopardy, and even when 'not followed by any judgment, is a bar to a subsequent prosecution for the same offence.' ... Thus it is one of the elemental principles of our criminal law that the Government cannot secure a new trial by means of an appeal even though an acquittal may appear to be erroneous.") (quoting *Ball*, 163 U.S. at 671, 16 S.Ct. at 1195, 41 L.Ed. at 303) (citations omitted). Thus, any retrial or subsequent prosecution of the defendant on the felony murder charge would clearly violate the defendant's federal and state double jeopardy rights.

The State, however, did not retry or subsequently prosecute the defendant on the felony murder charge, but instead retried the defendant on the robbery and conspiracy charges, upon which the jury had been unable to reach a verdict. Thus, we must determine whether the robbery, of which the defendant was convicted in the second trial, constitutes the "same offense" as the felony murder charge, of which he was acquitted in the first trial.

The test for determining whether two or more offenses constitute the "same offense" under the federal Double Jeopardy Clause was outlined in *Blockburger v. United States:* "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932). Our review of alleged violations of the federal Double Jeopardy Clause is limited to the relevant statutes. *Grinstead v. State*, 684 N.E.2d 482, 486 (Ind.1997). *See also Iannelli v. United States*, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1294 n. 17, 43 L.Ed.2d 616, 627 n. 17 (1975) (the *Blockburger* test "focuses on the statutory elements of the offense") (citations omitted).

■ A conviction for the crime of felony

7. In his Brief of Defendant–Appellant, the defendant essentially argues (1) that the felony murder charge resulted in acquittal, (2)(a) that the robbery charge was a lesser included offense within the felony murder charge, and (b) thus that it was barred and his conviction should be vacated because of the felony murder acquittal, and (3)(a) that the conspiracy charge alleged the robbery and murder as the overt acts, (b) that the robbery charge required no proof beyond the conspiracy conviction, and (c) thus that the conspiracy charge was barred and the conspiracy conviction should be vacated because of the felony

murder acquittal and the bar to prosecution for the robbery. In his petition to transfer, the defendant challenges the robbery conviction, arguing that robbery is a lesser included offense of felony murder, of which he was acquitted. Also in his petition to transfer, he argues that his conspiracy and robbery convictions constitute multiple punishments for the same offense. To address the defendant's arguments, we discuss the issue regarding the defendant's retrial on the robbery charge after acquittal in Part 1 and the issue regarding multiple punishments for robbery and conspiracy to commit robbery in Part 3.

murder [8] requires proof that a person was killed during the commission or attempted commission of one of several specified felonies, including robbery, but a conviction for the crime of robbery [9] does not require proof of any facts in addition to those required to prove felony murder by the robbery. Thus, under the *Blockburger* test, the robbery is the same offense as the felony murder by robbery.

However, even though felony murder by robbery and robbery are the same offense under the federal *Blockburger* test, the defendant's retrial on the robbery charge is not precluded by federal double jeopardy principles. The *Blockburger* test does not always determine whether there is a double jeopardy violation because the "same offense" issue is only one aspect of double jeopardy jurisprudence.

■ Other aspects of federal double jeopardy jurisprudence are relevant to this case.[10] Even though two or more charged offenses may constitute the "same offense" under the *Blockburger* test, a defendant may be tried in the same proceeding for multiple offenses, including greater and lesser included offenses, because the jeopardy is simultaneous. *See Jeffers v. United States,* 432 U.S. 137, 152 & n. 20, 97 S.Ct. 2207, 2217 & n. 20, 53 L.Ed.2d 168, 181 & n. 20 (1977) ("a defendant is normally entitled to have charges on a greater and lesser offense resolved in one proceeding") (plurality opinion); *United States v. Larkin,* 605 F.2d 1360, 1367–68 (5th Cir. 1979), *modified on reh'g on other grounds,* 611 F.2d 585 (1980), *cert. denied,* 446 U.S. 939, 100 S.Ct. 2160, 64 L.Ed.2d 793 (1980).

■ Furthermore, a defendant may be retried for a lesser offense, of which he was convicted at the first trial, after that conviction is reversed on appeal, and this is true even though the first trial also

resulted in a verdict of acquittal on a greater offense. *See Price v. Georgia,* 398 U.S. 323, 326–27, 90 S.Ct. 1757, 1759–60, 26 L.Ed.2d 300, 304 (1970). In *Price,* the defendant was tried simultaneously on murder and manslaughter charges and was convicted of the lesser offense. The conviction was reversed on appeal, and the defendant was retried and convicted on both charges. The Supreme Court reversed the murder conviction obtained in the second trial on the ground that the acquittal on that charge in the first trial barred its reprosecution, but the Court indicated that a retrial on the manslaughter charge was proper:

> [A] concept of continuing jeopardy . . . has application where criminal proceedings against an accused have not run their full course. . . .
>
> The continuing jeopardy principle necessarily is applicable to this case. Petitioner sought and obtained the reversal of his initial conviction for voluntary manslaughter by taking an appeal. Accordingly, no aspect of the bar on double jeopardy prevented his retrial for that crime.

*Id.*

■ The doctrine of continuing jeopardy applies in the context of mistrials. Early in its history, the U.S. Supreme Court recognized that the federal Double Jeopardy Clause does not bar the reprosecution of a defendant when a trial court terminates the first trial by discharging a jury that is unable to agree on a verdict. *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165, 165–66 (1824). The Court reasoned that "the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a

---

8. Ind.Code § 35–42–1–1 (1988 & Supp.1992).

9. Ind.Code § 35–42–5–1 (1988).

10. In addition to the aspects discussed *infra,* see *United States v. Lanza,* 260 U.S. 377, 43

S.Ct. 141, 67 L.Ed. 314 (1922) (holding that, under the federal Double Jeopardy Clause, a conviction or an acquittal in one jurisdiction does not bar a reprosecution in another jurisdiction for the "same offense").

manifest necessity for the act," and when the trial judge permits the defendant to be retried because "the ends of public justice would otherwise be defeated." *Id.* at 580, 6 L.Ed. at 165. The Court has held that the federal Double Jeopardy Clause does not prohibit a retrial when the mistrial was a "manifest necessity," even if the mistrial is declared over the defendant's objection. *Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). The Court explained that, "without exception, the courts have held that the trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial. This rule accords recognition to society's interest in giving the prosecution one complete opportunity to convict those who have violated its laws." *Id.* at 509, 98 S.Ct. at 832, 54 L.Ed.2d at 730. The Court has also held that the federal Double Jeopardy Clause generally does not bar a defendant's retrial when the first trial for the same crime ends in a mistrial at the defendant's request or when the defendant acquiesces in the mistrial. *U.S. v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976).

■ Thus, the U.S. Supreme Court has consistently held that "a retrial following a 'hung jury' does not violate the Double Jeopardy Clause." *Richardson v. United States,* 468 U.S. 317, 324, 104 S.Ct. 3081, 3085, 82 L.Ed.2d 242, 250 (1984) (citing *Logan v. United States,* 144 U.S. 263, 297–98, 12 S.Ct. 617, 628, 36 L.Ed. 429, 441 (1892)). The Court has stated:

The double-jeopardy provision of the Fifth Amendment, however, does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed. There may be unforeseeable circumstances that arise during a trial making its completion impossible, such as the failure of a jury to agree on a verdict. In such event the purpose of law to protect society from those guilty of crimes frequently would be frustrated by denying courts power to put the defendant to trial again.... What has been said is enough to show that a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments.

*Wade v. Hunter,* 336 U.S. 684, 688–89, 69 S.Ct. 834, 837, 93 L.Ed. 974, 978 (1949). In *Richardson,* the U.S. Supreme Court, explaining that a "hung jury is [not] the equivalent of an acquittal," held:

[T]he failure of the jury to reach a verdict is not an event which terminates jeopardy.... [A] trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which [the defendant] was subjected. The Government, like the defendant, is entitled to resolution of the case by verdict from the jury, and jeopardy does not terminate when the jury is discharged because it is unable to agree.

*Richardson,* 468 U.S. at 325–26, 104 S.Ct. at 3086, 82 L.Ed.2d at 251. Thus, the concept of continuing jeopardy applies to a mistrial caused by a deadlocked jury. *See, e.g., United States v. Sanford,* 429 U.S. 14, 97 S.Ct. 20, 50 L.Ed.2d 17 (1976) (per curiam); *Downum v. United States,* 372 U.S. 734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100, 102 (1963); *Green,* 355 U.S. at 188, 78 S.Ct. at 224, 2 L.Ed.2d at 205. Likewise, in cases in which the prosecutor charges different offenses in separate counts and the jury reaches a verdict as to some counts but not as to others, the jury may render a verdict as to the charge or charges upon which the jurors do agree, and the charges on which they do not agree may be tried again. *See Selvester v. United States,* 170 U.S. 262, 269–70, 18 S.Ct. 580, 582–83, 42 L.Ed. 1029, 1032 (1898). The Fifth Circuit Court of Ap-

peals concluded that "an acquittal on a greater offense does not preclude a retrial on a lesser offense to which continuing jeopardy has attached, and this result obtains whether the applicability of continuing jeopardy results from an appellate reversal of a conviction as in *Price* or from a mistrial caused by a deadlocked jury." *Larkin,* 605 F.2d at 1369 (citing *United States v. Scott,* 464 F.2d 832 (D.C.Cir. 1972); *Forsberg v. United States,* 351 F.2d 242 (9th Cir.1965)).

In *Green,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199, the Supreme Court discussed the doctrine of implied acquittal. In *Green,* the jury at the first trial was instructed on the offenses of first- and second-degree murder and found that the defendant was guilty of second-degree murder. The defendant's conviction was reversed on appeal. On remand, the defendant was again tried for first- and second-degree murder and ultimately convicted of first-degree murder. The Supreme Court held that the defendant's retrial on the charge of first-degree murder subjected him to double jeopardy. *Id.* at 191, 78 S.Ct. at 225, 2 L.Ed.2d at 206 ("[T]his case can be treated no differently, for purposes of former jeopardy, than if the jury had returned a verdict which expressly read: 'We find the defendant not guilty of murder in the first degree but guilty of murder in the second degree.'"). *See also Price,* 398 U.S. at 329, 90 S.Ct. at 1761, 26 L.Ed.2d at 305 ("[T]his Court has consistently refused to rule that jeopardy for an offense continues after an acquittal, whether that acquittal is express or implied by a conviction on a lesser included offense when the jury was given a full opportunity to return a verdict on the greater charge."). The Court held that if the jury is "given a full opportunity to return a verdict" on the greater offense and instead convicts

on a lesser offense, an implicit acquittal with respect to the greater offense results. *Green,* 355 U.S. at 191, 78 S.Ct. at 225, 2 L.Ed.2d at 206. The Court has summarized *Green* as "hold[ing] only that when one is convicted of a lesser offense included in that charged in the original indictment, he can be retried only for the offense of which he was convicted rather than that with which he was originally charged." *United States v. Tateo,* 377 U.S. 463, 465 n. 1, 84 S.Ct. 1587, 1589 n. 1, 12 L.Ed.2d 448, 450 n. 1 (1964). The Michigan Supreme Court summarized the *Green* holding as follows: "a defendant may be retried for any of the lesser included offenses, but may not be retried for an offense greater than the one of which he was originally convicted." *People v. Garcia,* 448 Mich. 442, 531 N.W.2d 683, 690 (1995).

The U.S. Supreme Court has held that, where a defendant has been tried and convicted of a lesser included offense, he cannot be subsequently tried in a separate prosecution for the greater offense without violating double jeopardy. *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). The Court, however, clearly limited the application of this holding to separate prosecutions, stating that "[w]e are not concerned here with the double jeopardy questions that may arise when a defendant is retried on the same charge after a mistrial...." [11] *Id.* at 165 n. 5, 97 S.Ct. at 2225 n. 5, 53 L.Ed.2d at 194 n. 5.

■ In the present case, the defendant's federal double jeopardy rights would have been violated had he been convicted and sentenced for both felony murder and the underlying felony because the conviction for murder during the commission of a felony would necessarily require proof of the underlying felony.[12] *Harris v. Okla-*

---

**11.** *Brown* applies only when the government could have tried the greater and lesser offenses in a single proceeding but did not do so. *See Jeffers,* 432 U.S. at 150–52, 97 S.Ct. at 2215–17, 53 L.Ed.2d at 180–81.

**12.** This Court has held that the underlying felony is a lesser-included offense of the felony murder. *Zenthofer v. State,* 613 N.E.2d 31, 35 (Ind.1993); *Huffman v. State,* 543 N.E.2d 360, 380 (Ind.1989), *overruled on other*

*homa,* 433 U.S. 682, 682, 97 S.Ct. 2912, 2913, 53 L.Ed.2d 1054, 1056 (1977); *Hobson v. State,* 675 N.E.2d 1090, 1094 (Ind. 1996); *Kennedy v. State,* 674 N.E.2d 966, 967 (Ind.1996); *Gregory–Bey v. State,* 669 N.E.2d 154, 157 (Ind.1996); *Moore v. State,* 652 N.E.2d 53, 59 (Ind.1995); *Swafford v. State,* 498 N.E.2d 1188, 1191 (Ind. 1986); *Eddy v. State,* 496 N.E.2d 24, 29 (Ind.1986); *Williams v. State,* 426 N.E.2d 662, 670 (Ind.1981); *Mitchell v. State,* 270 Ind. 4, 7, 382 N.E.2d 932, 934 (1978) ("The United States Supreme Court has held that where a felony murder conviction requires proof of the underlying felony, the two offenses are considered to be the 'same' within the meaning of the Double Jeopardy Clause.") (citing *Harris,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054). But the defendant was not convicted on the felony murder by robbery charge. He was instead acquitted. Subsequently, he was retried on the robbery charge after a mistrial because the jury was unable to reach a verdict and then convicted of robbery.

 From the rule that a defendant may not be convicted and sentenced for both felony murder and the underlying felony it does not logically follow that a defendant's federal double jeopardy rights are violated when, in one trial, a defendant is acquitted of felony murder but convicted and sentenced for the underlying felony[13] or, as in this case, when a defendant is acquitted of felony murder, retried for the underlying felony because the first trial resulted in a mistrial on that charge, and then convicted and sentenced for the underlying offense.[14] While the State is required to prove all the essential elements of the felony murder *including the underlying felony* in order for the jury to convict the defendant of felony murder, a verdict of acquittal on the felony murder charge would not necessarily require the jury to have found the underlying felony was not proven. Stated differently, in order to acquit of felony murder, the fact-finder would not necessarily have determined that the underlying felony was not proven.

In this case, we cannot conclude that the acquittal on the felony murder charge resulted from any failure by the State to prove the elements of the robbery. The jury could not reach a verdict on the robbery and conspiracy charges, and, for this reason, the judge declared a mistrial as to those charges. If the State had failed to prove the robbery, the underlying felony, we presume that the jury would have reached a verdict of acquittal.

grounds, *Street v. State,* 567 N.E.2d 102 (Ind. 1991); *Collier v. State,* 470 N.E.2d 1340, 1341–42 (Ind.1984). Thus, when a defendant is convicted of both felony murder and the underlying felony, the defendant may only be sentenced for the greater offense of felony murder. *Hobson v. State,* 675 N.E.2d 1090, 1094 (Ind.1996); *Zenthofer,* 613 N.E.2d at 35; *Coleman v. State,* 465 N.E.2d 1130, 1135 (Ind. 1984); *Sims v. State,* 267 Ind. 215, 223, 368 N.E.2d 1352, 1356 (1977); *Candler v. State,* 266 Ind. 440, 458, 363 N.E.2d 1233, 1243 (1977). However, when the underlying offense is committed against two separate victims, either will suffice as the predicate for the felony murder, and the other survives to stand alone. *Reaves v. State,* 586 N.E.2d 847, 851 (Ind.1992). Cf. *Hansford v. State,* 490 N.E.2d 1083, 1089 (Ind.1986).

13. See *Fleener v. State,* 274 Ind. 473, 478, 412 N.E.2d 778, 782 (1980) ("We recognize that under appropriate circumstances a defendant charged with felony murder could be acquitted of felony murder but found guilty of the underlying felony.") (citing *Whitten v. State,* 263 Ind. 407, 414, 333 N.E.2d 86, 91 (1975); *Hester v. State,* 262 Ind. 284, 289, 315 N.E.2d 351, 354 (1974)).

14. There is no double jeopardy bar that would prevent a defendant, who is acquitted of felony murder and convicted of the underlying felony, but whose conviction is reversed on appeal, from being retried for the underlying felony. See *Larkin,* 605 F.2d 1360 (defendant indicted for greater offense and convicted of lesser-included offense may be retried for lesser-included offense when conviction is reversed on appeal). We can think of no reason, and the defendant presents no contrary authority, why the fact that there was a mistrial because of a hung jury instead of a verdict of conviction should bar his retrial for the underlying felony.

We hold that the defendant was not placed in jeopardy twice for the same offense. Rather, the initial jeopardy, which was suspended because of mistrial, continued upon retrial.[15] We conclude, therefore, that the defendant's federal double jeopardy rights were not violated when he was retried on the robbery charge after he was acquitted of felony murder in the first trial and a mistrial was declared on the other two charges.[16]

**15.** Other state and federal courts have held similarly. *See, e.g., United States v. DeVincent,* 632 F.2d 155 (1st Cir.1980) (holding that federal double jeopardy jurisprudence does not bar the defendant's retrial on an offense after a mistrial, even though the defendant was acquitted of a greater offense and the retrial would be of a lesser-included offense); *Larkin,* 605 F.2d at 1368–69 ("an acquittal on a greater offense does not preclude a retrial on a lesser offense to which continuing jeopardy has attached, and this result obtains whether the applicability of continuing jeopardy results from an appellate reversal of a conviction as in [*Price,* 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300] or from a mistrial caused by a deadlocked jury"); *Scott,* 464 F.2d at 833–34 ("[T]he fact that the first jury was unable to agree as to the robbery count is ·fatal to [defendant's] notion that the acquittal of armed robbery was based on a finding that he was not the robber. The verdict of not guilty of armed robbery was clearly based on a doubt whether the robber was armed, and not at all upon a finding that [the defendant] was not the robber. That is to say, the first jury found the [defendant] was not an armed robber, but was unable to agree as to whether he was an unarmed robber."); *Staael v. State,* 697 P.2d 1050, 1055 n. 2 (Alaska App.Ct. 1985) ("When a defendant is charged with two offenses in a single proceeding, one of which is a lesser-included offense of the other, and the jury acquits on the greater offense but cannot reach a verdict on the lesser offense, double jeopardy does not bar retrial of the lesser offense except as required by rules of collateral estoppel."), *aff'd,* 718 P.2d 948 (Alaska 1986); *Stone v. Superior Court,* 31 Cal.3d 503, 183 Cal.Rptr. 647, 646 P.2d 809, 821 (1982) ("an acquittal of a greater offense does not bar retrial for a lesser included offense as to which the jury was deadlocked, when the lesser included offense is expressly charged in a separate count" and "a retrial after a jury deadlock does not violate the double jeopardy clause") (citing California cases); *People v. Webb,* 66 Cal.2d 107, 56 Cal.Rptr. 902, 424 P.2d 342, 356 (1967) ("a retrial of a count on which the jury fails to agree is not 'another prosecution' within the meaning of Penal Code section 1023, and hence is not barred by the double jeopardy doctrine"); *State v. Russell,* 101 Wash.2d 349, 678 P.2d 332 (1984) (holding that the federal Double Jeopardy Clause did not bar the state from retrying the defendant for a lesser-included offense, on which the jury was instructed in the first trial, even though the defendant was acquitted of the greater offense in the first trial). *Cf. State v. Crago,* 93 Ohio App.3d 621, 639 N.E.2d 801 (1994).

**16.** Other courts have reached the same result but for different reasons, concluding that a defendant's federal double jeopardy rights are not violated when he is retried for a lesser-included offense, after being implicitly acquitted of a greater offense, because the U.S. Supreme Court's doctrine of implied acquittal, which the Court established in *Green,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199, is inapplicable when a defendant is retried for a lesser-included offense. *See United States v. Gooday,* 714 F.2d 80, 83 (9th Cir.1983) (holding that "acquittal on the indictment's first-degree murder count does not preclude retrial on the three lesser included offenses on which the jury was instructed" and that "[t]he fifth amendment's double jeopardy clause does not bar the Government from subjecting [the defendant] to a second trial under the original indictment for the lesser included offenses on which the jury was deadlocked"); *Forsberg,* 351 F.2d at 246–48 (holding that the federal Double Jeopardy Clause does not prevent the defendant from being retried for a lesser-included offense that was mistried, even though the jury acquitted the defendant of the separately-charged, greater offense); *Edmonds v. United States,* 273 F.2d 108, 113 (D.C.Cir.1959) (noting that *Green* held that "one whose conviction for second degree murder under a first degree indictment is reversed on appeal, cannot again be tried for murder in the first degree," determining that *Green* "does not go so far as to say the defendant cannot be tried again for second degree murder" because it is a lesser-included offense of the greater offense of which the defendant was impliedly acquitted, and holding that the defendant could be retried for second degree murder); *Garcia,* 531 N.W.2d at 689 (stating "an implicit acquittal arises only where it is evident that the jury has been afforded the opportunity to fully consider and decide the defendant's guilt or innocence with regard to the lesser offense so that the jury may be presumed to have acquitted the defendant of the greater offense" and holding that the defendant was not implicitly acquitted of and may be retried for armed robbery, which is a lesser-included offense of first-degree felo-

## 2. Collateral Estoppel

■ The defendant asserts that his acquittal on the felony murder charge barred, under the doctrine of collateral estoppel, the relitigation of certain factual issues in his retrial. More specifically, the defendant argues that "[c]ollateral estoppel applies to relitigating the facts which support conviction for the robbery charge, the conspiracy to commit robbery and those facts which proved the necessary elements of 'serious bodily injury' making the convictions Class A felonies under Ind. Code 35–42–5–1(2) and 35–41–5–2(a)." Brief of Defendant–Appellant at 13. We understand the defendant's contention to be that, in acquitting him of the charged felony murder by robbery, the jury necessarily determined that the State failed to prove: (1) that he killed Turner; (2) that he committed robbery resulting in serious injury to Turner; and (3) that he aided, induced, or caused the killing of Turner in the course of the robbery.

The U.S. Supreme Court has ruled that collateral estoppel in criminal trials is an ingredient of the protection against double jeopardy guaranteed by the Fifth and Fourteenth Amendments. *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). *Ashe* incorporated the rule of collateral estoppel into the guarantee against double jeopardy to protect "a man who has been acquitted from having to 'run the gauntlet' a second time." *Id.* at 446, 90 S.Ct. at 1195, 25 L.Ed.2d at 477.

The U.S. Supreme Court has held that, while " '[c]ollateral estoppel' is an awkward phrase, ... it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* at 443, 90 S.Ct. at 1194, 25 L.Ed.2d at 475. *See also Harris v. Washington*, 404 U.S. 55, 92 S.Ct. 183, 30 L.Ed.2d 212 (1971); *Bonham v. State*, 644 N.E.2d 1223, 1226 (Ind.1994) (" 'Generally, collateral estoppel operates to bar a subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in the subsequent lawsuit.' ") (quoting *Sullivan v. American Cas. Co.*, 605 N.E.2d 134, 137 (Ind.1992)). The interplay between double jeopardy and collateral estoppel has been described this way:

> [W]hile the parent doctrine of double jeopardy bars a subsequent prosecution based on a different section of the criminal code when "the evidence required to support a conviction upon one of [the indictments] would have been sufficient to warrant a conviction upon the other," its progeny, collateral estoppel, bars only the reintroduction or relitigation of facts already established against the government. To state the distinction in more prosaic terms, the traditional bar of jeopardy prohibits the prosecution of the crime itself, whereas collateral estoppel, in a more modest fashion, simply

---

ny murder, even though the defendant was implicitly acquitted of first-degree felony murder when the jury in the first trial found him guilty of second-degree murder); *People v. Rosario*, 166 Ill.App.3d 383, 116 Ill.Dec. 805, 519 N.E.2d 1020 (1988) (holding that the federal Double Jeopardy Clause does not bar the retrial of the defendant on the arson charge, which was mistried in the first trial, even though the arson was a lesser-included offense of the felony-murder of which the defendant was acquitted, and expressly noting that the jury in the first trial did not acquit the defendant of the arson counts); *People v.*

*Jenkins*, 41 Ill.App.3d 392, 354 N.E.2d 139, 141 (1976) (holding that "an acquittal on a greater offense does not bar a subsequent prosecution on any lesser included offenses when these offenses are charged in the indictment, considered by the trier of fact and a mistrial is subsequently declared because the jury is unable to reach a verdict as to the included offenses" and noting that the jury was not silent as to the included offenses, which would imply acquittal, but rather was simply unable to reach a unanimous verdict).

Thus, the same result would also obtain under this second line of reasoning.

forbids the government from relitigating certain facts in order to establish the fact of the crime.

*United States v. Mock*, 604 F.2d 341, 343–44 (5th Cir.1979), *quoted in Little v. State*, 501 N.E.2d 412, 414 (Ind.1986).

With the doctrine of collateral estoppel, "the prime consideration is whether the party against whom the prior judgment is pled had a full and fair opportunity to litigate the issue and whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel." *Bonham*, 644 N.E.2d at 1226 (quoting *Sullivan*, 605 N.E.2d at 138). We have also noted: "We agree that 'once a defendant has satisfied one jury that he is not guilty of a crime, constitutionally-rooted considerations of fairness preclude the Government from injecting any issues necessarily decided in his favor into a second trial for another offense.'" *Little*, 501 N.E.2d at 415 (quoting *United States v. Mespoulede*, 597 F.2d 329, 330 (2d Cir.1979)).

When we apply the doctrine of collateral estoppel, we determine what the first judgment decided and examine how that determination bears on the second case. *Webb v. State*, 453 N.E.2d 180, 183 (Ind.1983) (citing *Mespoulede*, 597 F.2d 329). *Ashe* further instructs:

> Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to [ ]examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.[ ]

*Ashe*, 397 U.S. at 444, 90 S.Ct. at 1194, 25 L.Ed.2d at 475–76 (quotation marks and footnote omitted). As we further observed in *Little*:

> Application of collateral estoppel in this context requires that the trial court determine what facts were necessarily decided in the first law suit. The court

must examine the record of the prior proceeding, taking into consideration the pleadings, evidence, charge and other relevant matters. *Ashe*, 397 U.S. at 444, 90 S.Ct. at 1194, 25 L.Ed.2d at 475. Then the court must decide whether the government in a subsequent trial attempted to relitigate facts necessarily established against it in the first trial. *See United States v. Mock*, 604 F.2d at 343, 344. If so, evidence of the former offense must be suppressed. "The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality." *Ashe*, 397 U.S. at 444, 90 S.Ct. at 1194, 25 L.Ed.2d at 475.

*Little*, 501 N.E.2d at 415. The Indiana Court of Appeals explained the application of this two-step process:

> Determining what the first judgment decided involves an examination of the record of the prior proceedings including the pleadings, evidence, charge and any other relevant matters. The court must then decide whether a reasonable jury could have based its verdict upon any factor other than the factor of which the defendant seeks to foreclose consideration. If the jury could have based its decision on another factor, then collateral estoppel does not bar relitigation.

*Segovia v. State*, 666 N.E.2d 105, 107 (Ind. Ct.App.1996) (citing *Webb*, 453 N.E.2d at 184) (internal citations omitted).

■■■ In the first trial, as to the felony-murder count on which the jury acquitted the defendant, the jury instructions stated in relevant part:

> In Count II, the crime of murder is defined ... a person who knowingly or intentionally kills another human being while committing or attempting to commit robbery, commits murder, a felony. To convict the defendant, the State must have proved each of the following ele-

ments, the defendant number one (1) killed; number [two] (2), David S. Turner; number three (3), while committing robbery by unlawfully, knowing taking property to-wit: approximately ten (10) pounds of marijuana, from David S. Turner, by using force on David S. Turner, resulting in serious bodily injury to David S. Turner; number four (4), in Delaware County, Indiana. If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty.

Record at 1892. This instruction misstates the law in a manner favorable to the defendant. The crime of murder may occur, essentially, in either of two forms: (1) as a knowing or intentional killing, or (2) as felony murder, which does not require a knowing or intentional killing, but rather only a killing while committing or attempting to commit one of the prescribed felonies. IND.CODE § 35-42-1-1.[17] Significantly, the jury instruction required specific culpability, an element of proof not actually required by statute for the charged offense of felony murder. The jury was also instructed regarding accomplice liability and directed that it could

find the defendant guilty of felony murder if it found felony murder committed by another person and if the jury also found that "the defendant knowingly aided, induced, or caused the other person to commit an offense." Record at 1899–1900.[18] However, other instructions stated that "[a] person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so," Record at 1896, and that "[t]he State is only required to produce such evidence as will satisfy you beyond a reasonable doubt that the crime charged was committed by the defendant, as a principal or as an accessory, with the requisite intent," Record at 1897. Considered together, we find that the instructions directed the jury in the defendant's first trial that, even if the jury found that the defendant aided in the commission of robbery, before it could find the defendant guilty of felony murder, the State must also prove beyond a reasonable doubt that the defendant's participation in the killing was knowing or intentional.

We find evidence in the first trial casting doubt on whether the defendant knowingly

---

**17.** IND.CODE § 35-42-1-1 states:

> Sec. 1. A person who:
> (1) knowingly or intentionally kills another human being;
> (2) kills another human being while committing or attempting to commit arson, burglary, child molesting, consumer product tampering, criminal deviate conduct, kidnapping, rape, robbery, or carjacking; or
> (3) kills another human being while committing or attempting to commit:
> (A) dealing in cocaine or a narcotic drug (IC 35-48-4-1);
> (B) dealing in a schedule I, II, or III controlled substance (IC 35-48-4-2);
> (C) dealing in a schedule IV controlled substance (IC 35-48-4-3); or .
> (D) dealing in a schedule V controlled substance;
> commits murder, a felony.

**18.** The instructions included the following:

> A jury may infer participation in a crime from several factors, presence at the scene, failure to oppose the crime, companionship with the principal and conduct before, during and after the offense which tends to show complicity. Mere presence at the scene of the crime is not sufficient to allow an inference of participation. The Court instructs you that it is the law in the State of Indiana that a person engaged in the commission of an unlawful act is legally responsible for all the consequences which may naturally or necessarily flow from it. If he combines and confederates with others to accomplish an illegal purpose, he is liable criminally for everything done by his confederates which flow incidentally from the execution of the common design as the natural and probable consequences of the common design. This rule of criminal responsibility for the acts of others is subject to the reasonable limitation that the particular act or acts of one member of a party, for which the other associates and confederates are to be held liable, must be shown to have been done for the furtherance or in prosecution of the common object and design for which the persons combined together.
> Record at 1900–01.

or intentionally participated in the killing. According to Craig's testimony,[19] Craig hit Turner twice on the head, the second blow knocking him to the floor unconscious. Ransom then taped Turner's hands behind his back with shipping tape. The defendant hit Turner on the head with a piece of metal and placed a plastic garbage bag over Turner's head.[20] Ransom pressed the air out of the bag and taped the bag tightly around Turner's neck. Hartman, Craig, and Ransom drove in Hartman's truck to a remote area to dispose of Turner's body, but the defendant refused to go along because he did not want to ride in the truck with the body. According to Hartman's testimony, Hartman was the middle man in the drug deal between Turner and Craig, and the profit from this sale would provide Hartman with the money necessary to leave town. Hartman also testified that Turner dropped Hartman off at the Hartman residence at around 9:00 p.m. and that Craig and Turner then left in Turner's car. Hartman testified that the defendant was at the Hartman residence, lying on the couch sick, and that Craig and Ransom were not at the Hartman residence. Craig and Ransom, according to Hartman's testimony, returned to the Hartman residence around midnight.

The defendant testified that he did not have any conversation with Hartman, Ransom, Craig, or anyone else regarding robbing Turner of marijuana. He also testified that, on the day of the robbery, he was sick and spent the day at the Hartman residence on the couch. In his testimony he recounted that he saw Craig and Ransom on the day of the robbery, but that he did not hear any talk regarding the sale of any drugs that night. He also testified that, on the day of the robbery, he never went to the house where the robbery occurred, that he did not hit Turner on the head with any object, that he did not plan to rob Turner, that he did not rob Turner or participate in the robbery, that he did not put a bag over Turner's head, that he did not kill Turner, see him killed, or assist anyone in the killing, and that he did not load Turner's body into a truck or dispose of the body in the country. His testimony also was that he did not learn that Turner was dead until he arrived back in Indiana, after being arrested in Florida. When Turner's body was discovered, his hands were still taped behind his back. There were no obvious gun shot or stab wounds or any fractures. Because the body was so badly decomposed, those examining the body could not determine whether Turner died of suffocation, a broken neck, or any other natural or unnatural cause, and they finally concluded that the cause of death was undetermined homicidal violence.

**19.** In the first trial, Craig's testimony supplied some of the strongest evidence implicating the defendant.

**20.** Under cross-examination, Craig was confronted with prior inconsistent statements. While he was in prison, but before he agreed to change his plea from not guilty to guilty, Craig wrote and signed a statement, witnessed by a notary public, declaring that Hartman and the defendant were not involved in the crimes. The statement read in part:

> I, Shane Craig, am filling out an affidavit saying that Joseph F. Hartman and Edward C. Griffin had no involvement or knowledge about the case that took place June 15th, 1993. The reason I am filling this out is because I can't see holding two (2) people on charges they didn't commit. I am doing this on my own free will and no one has

> promised me anything or threatened my life in any way, shape or form.

Record at 1106, 1107. Later, after being sentenced on his plea of guilty, Craig mused in a letter to his girlfriend, "[D]on't you like the way I set my co-defendant's up? ha ha." Record at 1201, 1204. When asked on cross-examination, "You did set up your co-defendant's, didn't you?," Craig responded, "They couldn't blame me." Record at 1205. Craig also acknowledged during cross-examination that he mentioned the plastic garbage bag and the defendant's and Ransom's involvement for the first time when he changed his plea on the robbery charge to guilty. According to Craig's testimony, Hartman, Ransom, and the defendant all denied any knowledge of the bag.

We conclude that a rational jury could have acquitted the defendant of felony murder, under its instructions from the trial court, because the evidence did not establish beyond a reasonable doubt that the defendant knowingly or intentionally killed Turner.

A second ground for our conclusion is that a rational jury could have acquitted the defendant of felony murder upon an issue other than those the defendant seeks to foreclose under the doctrine of collateral estoppel. We agree with the opinion of the Court of Appeals on rehearing in its analysis of the claim. *Griffin*, 694 N.E.2d 304. Writing for the court, Judge Kirsch stated:

> The question, then, is whether a reasonable jury could have based its acquittal of Griffin of the felony murder upon any factor other than Griffin's participation in the robbery and conspiracy. We think it could. Because the cause of Turner's death was not known, it was reasonable for the jury to have concluded that the killing occurred after the robbery had been completed. Therefore, the felony murder could reasonably have been based upon Griffin's non-participation in the killing. A determination of Griffin's non-participation in the killing, does not preclude relitigation of his participation in the robbery or the conspiracy, issues the jury was unable to decide in the first trial. Griffin's retrial was not barred by principles of collateral estoppel.

*Id.* at 306.

For each of these reasons, we therefore find that the first jury could reasonably have grounded its verdict of acquittal upon an issue other than those the defendant now seeks to foreclose from consideration. We hold that collateral estoppel did not bar the retrial of the defendant on charges of robbery and conspiracy to commit robbery—the charges on which the first jury was unable to reach a verdict.

### 3. Double Jeopardy, Robbery, and Conspiracy to Commit Robbery

In his second trial, the defendant was convicted and sentenced for both robbery and conspiracy to commit robbery. The defendant argues that his convictions and sentences for both robbery and conspiracy to commit robbery constitute multiple punishments for the same offense and thus that they violate the federal and state constitutional protections against double jeopardy. He contends that the overt acts in furtherance of the conspiracy alleged by the State constituted the underlying offense of robbery.

### A. Federal Double Jeopardy

To convict of robbery, the State must prove the following essential elements under the statute: the defendant knowingly or intentionally took property from David Turner or from the presence of David Turner by using or threatening the use of force, or the defendant knowingly or intentionally aided, induced, or caused another person to commit robbery. IND.CODE §§ 35–42–5–1 & 35–41–2–4. The conspiracy statute provides in part:

(a) A person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony. A conspiracy to commit a felony is a felony of the same class as the underlying felony....

(b) The state must allege and prove that either the person or the person with whom he agreed performed an overt act in furtherance of the agreement.

IND.CODE § 35–41–5–2. To convict of conspiracy to commit robbery, the State must prove the following essential elements: the defendant agreed with another person to commit the crime of robbery with the intent to commit the robbery and either the defendant or another party to the agreement performed an overt act in furtherance of the agreement.

Applying the *Blockburger* test, we find that both the robbery charge and the conspiracy charge contain at least one separate and distinct element. The robbery charge requires the State to prove that the defendant or his accomplice took property from Turner or from his presence, which is not required to prove the conspiracy charge, and the conspiracy charge requires the State to prove an agreement and at least one overt act in the furtherance of the agreement, which are not required to prove the robbery charge.

Under federal double jeopardy jurisprudence, robbery and conspiracy to commit robbery are not the same offense.[21] We conclude, therefore, that the defendant's federal double jeopardy rights were not violated.

## B. Indiana Double Jeopardy

■ Today, in *Richardson v. State*, 717 N.E.2d 32, we explain that two tests apply to determine whether multiple offenses constitute the same offense under the Indiana Double Jeopardy Clause:

> [T]wo or more offenses are the "same offense" in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense.

*Id.* at 49. Under the statutory elements test, "[e]ach offense must contain at least one element which is separate and distinct from the other offense so that the same evidence is not necessary to convict for both offenses." *Id.* at 52. Having found that robbery and conspiracy to commit

21. The U.S. Supreme Court has held repeatedly that a defendant may be convicted of and sentenced for both a substantive offense and a conspiracy to commit that offense without violating the federal protection against double jeopardy. *See United States v. Felix*, 503 U.S. 378, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992); *Pereira v. United States*, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954); *Sealfon v. United States*, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180 (1948); *United States v. Bayer*, 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947); *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); *United States v. Mason*, 213 U.S. 115, 29 S.Ct. 480, 53 L.Ed. 725 (1909); *Carter v. McClaughry*, 183 U.S. 365, 22 S.Ct. 181, 46 L.Ed. 236 (1902). The Court has declared that "[i]t has been long and consistently recognized by the Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses." *Pinkerton*, 328 U.S. at 643, 66 S.Ct. at 1182, 90 L.Ed. at 1494. Thus, "[a] conviction for the conspiracy may be had though the substantive offense was completed.... And the plea of double jeopardy is no defense to a conviction for both offenses." *Id.* Explaining the rationale for this rule, the Court stated:

> This settled principle derives from the reason of things in dealing with socially reprehensible conduct: collective criminal agreement—partnership in crime—presents a greater potential threat to the public than

individual delicts. Concerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality. Group association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish. Nor is the danger of a conspiratorial group limited to the particular end toward which it has embarked. Combination in crime makes more likely the commission of crimes unrelated to the original purpose for which the group was formed. In sum, the danger which a conspiracy generates is not confined to the substantive offense which is the immediate aim of the enterprise.

*Callanan v. United States*, 364 U.S. 587, 593–94, 81 S.Ct. 321, 325, 5 L.Ed.2d 312, 317 (1961). The Court has also indicated:

> [I]t is not material that overt acts charged in the conspiracy counts were also charged and proved as substantive offenses. As stated in Sneed v. United States, ... "If the overt act be the offense which was the object of the conspiracy, and is also punished, there is not a double punishment of it." The agreement to do an unlawful act is even then distinct from the doing of the act.

*Pinkerton*, 328 U.S. at 644, 66 S.Ct. at 1182, 90 L.Ed. at 1495 (quoting *Sneed v. United States*, 298 F. 911, 913 (5th Cir.1924)).

robbery are not the same offense under the federal *Blockburger* test, we likewise find that the offenses are not the same under Indiana's analogous statutory elements test.

■ Even though these offenses are not the same offenses under the statutory elements test, we also apply the following actual evidence test:

> [T]he actual evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.

*Id.* at 53.

The evidence presented at the second trial established the following facts related to the conspiracy charge. The defendant and three companions met to discuss and develop a plan to get Turner to a certain house owned by the defendant's step-father and mother, to beat Turner, and to take the marijuana from him. In furtherance of this agreement, Hartman called Turner's beeper several times, arranged to have Turner meet Hartman at a hotel and to bring ten pounds of marijuana, and met Turner at the hotel. Meanwhile, the defendant, Craig, and Ransom went to the house where the robbery was to occur and waited until Hartman and Turner arrived with the marijuana.

The jury's application of the evidence was directed by the court's instructions, which included the reading of the State's formal information charging conspiracy to commit robbery. This charge expressly alleged various overt acts in furtherance of the agreement: a series of meetings over several days involving the defendant, Hartman, Craig, and Ransom to discuss and agree to rob Turner; Hartman con-

tacted Turner to request that he bring marijuana; Hartman met Turner at the motel; Hartman caused Turner to go to the residence; Craig and Ransom waited at the residence for Turner; Craig struck Turner on the head to render him unconscious; Ransom taped Turner's hands behind his back; a plastic bag was placed over Turner's head, suffocating him; and marijuana was taken from Turner's presence. The jury was thus informed that the completed robbery could be used to prove the overt act element required for conspiracy.

In support of the robbery charge, the trial evidence and reasonable inferences established that after Turner arrived at the house with the marijuana, Craig struck Turner twice with a wooden table leg; Ransom taped Turner's hands behind his back; the defendant struck Turner with a piece of metal; a plastic bag was taped over Turner's head; and Turner's marijuana was taken and delivered the next day to ·Doug Hoover, who agreed to sell it. The applicable jury instructions did not require the jury to find the existence of a prior agreement to rob in order to convict for robbery.

Considering the evidence presented of substantial advance preparation and the trial court's instructions for application of this evidence, we find no reasonable possibility that the evidentiary facts used by the jury to establish the essential elements of conspiracy to commit robbery may also have been used to establish the essential elements of robbery. To establish that two offenses are the same offense under the actual evidence test, the possibility must be reasonable, not speculative or remote. Applying the actual evidence test, the defendant's convictions for robbery and conspiracy to commit robbery are thus not the same offense, and there is no violation of the Indiana Double Jeopardy Clause.

## Conclusion

Transfer is granted. Except as otherwise provided above, we summarily affirm

the Court of Appeals. Ind. Appellate Rule 11(B)(3). The judgment of the trial court is affirmed.

SHEPARD, C.J., and SULLIVAN, and SELBY, JJ., concur. BOEHM, J., concurs in result with separate opinion, in which SELBY, J., concurs.

BOEHM, Justice, concurring in result.

I concur in parts 1, 2 and 3a of the majority's opinion and concur in result in 3b. I agree that Griffin's convictions for robbery and conspiracy to commit robbery were not improper. As explained in my opinion concurring in result in *Richardson v. State*, 717 N.E.2d 32, 57 (Ind.1999), I base this conclusion on the common law rule announced in *Thompson v. State*, 259 Ind. 587, 592, 290 N.E.2d 724, 727 (1972), that requires convictions to be supported by facts that were "independently supportable, separate and distinct." In contrast, this Court has often held that convictions for both conspiracy and the substantive crime are not permitted where the overt act charged in the conspiracy offense is the substantive crime. *See, e.g., Derado v. State*, 622 N.E.2d 181, 184 (1993). In light of the numerous overt acts charged and the evidence of each presented at trial, I agree that there is no reasonable possibility that the jury relied solely on the taking of marijuana (the robbery) as the overt act for the conspiracy conviction. Accordingly, convictions on both are proper under *Thompson*.

SELBY, J., concurs.