Marshaun BUGGS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0504–CR–316.

Court of Appeals of Indiana.

March 23, 2006.

Rehearing Denied May 10, 2006.

Transfer Denied June 27, 2006.

Marshelle Dawkins Broadwell, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Ryan D. Johanningsmeier, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Following acquittals on felony murder and conspiracy to commit robbery and deadlocks on murder and attempted robbery, Marshaun Buggs[1] was retried and convicted of murder and attempted robbery. Buggs appeals arguing that double jeopardy principles barred his retrial, that his sentence is inappropriate and disproportionate when compared to his co-defendant's sentence, and that the trial court erred in denying his motion for change of judge. Although principles of double jeopardy did not bar Buggs' retrial, we find that the evidence does not support his conviction for attempted robbery; therefore, we reverse that conviction. In all other respects, we affirm the trial court.

### Facts and Procedural History

The facts most favorable to the verdict are as follows. Natalie Medley and Reginald Moore dated from 1997 through November 2001, and for a period of that time, the two of them lived together. In the early fall of 2001, Medley met Buggs while she was working at PT's, a gentlemen's club in Indianapolis. The two developed a physical relationship, and beginning that November, Buggs, who lived in Missouri, would sometimes stay at Medley's apartment.

On December 16, 2001, Medley and Buggs, both of whom had been drinking alcohol and doing drugs, were discussing money that Moore allegedly owed Medley for marijuana, and they decided to go to Moore's apartment to collect that money. Medley knew that Moore had a safe in his apartment, in which he kept money, drugs, and guns. Under the guise of "get[ting] together," Medley called Moore and asked if she could come over to his apartment, and Moore said yes. Tr. p. 127. Medley

---

1. All of the court records, including both parties' briefs, spell the defendant's last name as Buggs; however, in Defendant's Exhibit A, the defendant himself spells his last name as Bugg. *See* Ex. p. 72. For purposes of consistency with the court records, we will use Buggs.

took Buggs with her because "he offered force." *Id.* at 123. In fact, Buggs brought a knife with him, and it "was implied that force could be taken" once they arrived at Moore's apartment. *Id.*

When Medley and Buggs arrived at Moore's apartment, Buggs hid from view. When Moore opened the door for Medley, Buggs rushed in and began stabbing Moore with the knife. At some point during the struggle, Buggs was stabbed in the leg. In the end, Buggs stabbed Moore at least twenty-two times, ten of which were to his head alone. While this was happening, Medley ran upstairs to the bathroom to look for Moore's wallet. After he was done stabbing Moore, Buggs joined Medley upstairs, where Moore's safe was. Buggs tried to open the safe but did not have the combination. The pair found nothing of value in Moore's apartment and then fled empty handed. Moore was dead when they left.

Medley and Buggs returned to Medley's apartment and disposed of the knife and their bloody clothes. In the days following Moore's death, Medley and Buggs stayed at various Indianapolis hotels. Medley then drove Buggs to Illinois, where he received medical treatment for the stab wound under a fictitious name.

When Moore did not show up for a family event, family members became concerned. On December 22, 2001, Felix Moore, Moore's brother, went to Moore's apartment, where he found Moore's decomposing body. During the investigation, Felix gave the police Medley's name as a possible suspect. When first interviewed, Medley denied involvement in Moore's murder. In a second interview, however, Medley admitted that she and Buggs were involved in the murder.

Buggs' blood was found on the safe and in Medley's car.

The State tried Medley first in 2002, and she was convicted of felony murder and conspiracy to commit robbery.[2] The trial court sentenced her to sixty years for felony murder and eight years for conspiracy to commit robbery and ordered the sentences to run concurrently. This court affirmed Medley's convictions and sentence on direct appeal. *Medley v. State*, No. 49A02–0210–CR–870, 792 N.E.2d 101 (Ind.Ct.App. July 8, 2003).

The State charged Buggs with Murder, Felony Murder, Conspiracy to Commit Robbery as a Class A felony, and Attempted Robbery as a Class A felony. A jury trial was held in 2004. At the conclusion of this trial, the jury acquitted Buggs of felony murder and conspiracy to commit robbery; it hung on murder and attempted robbery. In 2005, Buggs was retried on murder and attempted robbery. Prior to trial and again during trial, Buggs moved to dismiss the charges on grounds that his retrial violated both the federal and state prohibitions against double jeopardy, but the trial court denied his motions. The second jury convicted Buggs of murder and attempted robbery as a Class A felony. Finding the murder to be one of the most brutal and heinous it had ever seen, the trial court sentenced Buggs to the maximum term of sixty-five years for murder, reduced the Class A felony attempted robbery to a Class B felony, and sentenced him to the maximum term of twenty years for attempted robbery as a Class B felony, to be served concurrently. Buggs now appeals.

## Discussion and Decision

Buggs raises three issues on appeal. First, he contends that his retrial on murder and attempted robbery after his ac-

2. Medley was also convicted of drug crimes

stemming from the search of her apartment.

quittal on felony murder and conspiracy to commit robbery violates double jeopardy principles. Second, Buggs contends that his sentence is inappropriate and disproportionate when compared to Medley's sentence. Last, he contends that the trial court erred in denying his motion for change of judge. We analyze each issue in turn.

## I. Double Jeopardy

Buggs contends that the trial court erred in denying his motion to dismiss because his retrial on murder and attempted robbery after his acquittal on felony murder and conspiracy to commit robbery violates double jeopardy principles. We first analyze this issue under the federal Double Jeopardy Clause.

The Indiana Supreme Court addressed whether a defendant could be retried after an acquittal under the federal Double Jeopardy Clause in *Griffin v. State*, 717 N.E.2d 73 (Ind.1999). In *Griffin*, the defendant was charged with felony murder by robbery, robbery, and conspiracy to commit robbery. In his first trial, Griffin was acquitted of felony murder; the jury hung on robbery and conspiracy to commit robbery. He was then retried on robbery and conspiracy to commit robbery and convicted of both. Griffin appealed, arguing that federal double jeopardy jurisprudence prohibited his retrial on robbery and conspiracy to commit robbery.[3]

On appeal, our Supreme Court first observed that federal double jeopardy jurisprudence bars "a defendant from being prosecuted for an offense after being acquitted for the same offense." *Id.* at 77. Accordingly, the court held that any retrial or subsequent prosecution of Griffin for felony murder "would clearly violate the defendant's federal and state double jeopardy rights." *Id.* The court pointed out, however, that the State did not retry Griffin on felony murder. Therefore, the court framed the issue as "whether the robbery, of which the defendant was convicted in the second trial, constitutes the 'same offense' as the felony murder charge, of which he was acquitted in the first trial." *Id.* The court then applied the *Blockburger* test and concluded that robbery was the same offense as felony murder by robbery.[4] *Id.* at 78.

However, our Supreme Court said that even though felony murder by robbery and robbery were the same offense under *Blockburger*, Griffin's retrial on the robbery charge was not precluded by federal double jeopardy principles. *Id.* This is because "the 'same offense' issue is only one aspect of double jeopardy jurisprudence." *Id.* The court then looked to the doctrine of continuing jeopardy, which recognizes that the federal double jeopardy clause does not bar the reprosecution of a defendant when a trial court terminates the first trial by discharging a jury that is unable to agree on a verdict. *Id.* "[W]ithout exception, the courts have held that the trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial. This rule

---

**3.** Our Supreme Court specifically noted that Griffin did not argue that the Indiana Double Jeopardy Clause required a result different than that reached under federal double jeopardy jurisprudence on this issue. *Griffin,* 717 N.E.2d at 76 n. 6. Therefore, the court did not conduct a separate review under the Indiana Double Jeopardy Clause.

**4.** Specifically, the court said:

> A conviction for the crime of felony murder requires proof that a person was killed during the commission or attempted commission of one of several specified felonies, including robbery, but a conviction for the crime of robbery does not require proof of any facts in addition to those required to prove felony murder by the robbery.
>
> *Griffin,* 717 N.E.2d at 78 (footnotes omitted).

accords recognition to society's interest in giving the prosecution one complete opportunity to convict those who have violated its law." *Id.* at 79 (quotation omitted). The court highlighted that a hung jury is neither the equivalent of an acquittal nor an event that terminates jeopardy; therefore, the doctrine of continuing jeopardy applies to a mistrial caused by a deadlocked jury, and the charges on which the jury did not agree may be tried again. *Id.* More specifically, the court emphasized that an acquittal on a greater offense does not preclude a retrial on a lesser offense to which continuing jeopardy has attached, and this result obtains from a mistrial caused by a deadlocked jury. *Id.* at 80.

■ Finally, our Supreme Court discussed the doctrine of implied acquittal. This doctrine provides that if a jury is given a full opportunity to return a verdict on a greater offense and instead convicts on a lesser offense, an implicit acquittal with respect to the greater offense occurs. *Id.* "[W]here a defendant has been tried and convicted of a lesser included offense, he cannot be subsequently tried in a separate prosecution for the greater offense without violating double jeopardy." *Id.*

Our Supreme Court then applied the above principles to Griffin and indicated that his federal double jeopardy rights would have been violated had he been convicted and sentenced for both felony murder and the underlying felony. *Id.* But, the court added, Griffin was not convicted of felony murder by robbery; instead, he was acquitted of that charge and then retried and convicted of robbery. *Id.* at 81. The court explained that a verdict of acquittal on felony murder "would not necessarily require the jury to have found the underlying felony was not proven. Stated differently, in order to acquit of felony murder, the fact-finder would not necessarily have determined that the un-

derlying felony was not proven." *Id.* The court presumed that had the State failed to prove robbery, the jury would have reached a verdict of acquittal. *Id.* Accordingly, the court held that Griffin "was not placed in jeopardy twice for the same offense. Rather, the initial jeopardy, which was suspended because of mistrial, continued upon retrial." *Id.* at 82 (footnote omitted). We now apply these principles to Buggs.

■ We first note that felony murder, of which Buggs was acquitted in the first trial, and murder, of which Buggs was convicted in the second trial, are not the same offense. This is because felony murder requires a killing *during the commission of a specified felony* while murder requires a *knowing or intentional* killing. *See* Ind.Code § 35–42–1–1. Therefore, federal double jeopardy principles did not prohibit Buggs' retrial for murder.

■ As for whether Buggs could be retried for attempted robbery, pursuant to *Griffin*, felony murder and attempted robbery are the same offense. *See Griffin*, 717 N.E.2d at 78. However, this does not end our analysis of the issue because the doctrine of continuing jeopardy applies. That is, a defendant who is retried following a hung jury is not placed in jeopardy twice for the same offense because the initial jeopardy that attaches to a charge is simply suspended by the jury's failure to reach a verdict. *Davenport v. State*, 734 N.E.2d 622, 625 (Ind.Ct.App.2000), *trans. denied.* "The original jeopardy continues upon retrial and never terminates so as to give rise to the possibility of double jeopardy." *Id.* As such, Buggs' acquittal for felony murder did not preclude a retrial on attempted robbery to which continuing jeopardy had attached. *See Griffin*, 717 N.E.2d at 80. Furthermore, the doctrine of implied acquittal does not apply because Buggs was acquitted of the greater of-

fense. Therefore, there was no implicit acquittal of the lesser offense, attempted robbery.

In sum, Buggs' acquittal for felony murder would not necessarily require the jury to have found that the underlying felony, attempted robbery, was not proven. Just as in *Griffin*, we presume that had the State failed to prove attempted robbery, the jury would have reached a verdict of acquittal. *See id.* at 81. Therefore, Buggs was not placed in jeopardy twice for the same offense. Rather, the initial jeopardy, which was suspended because of mistrial, continued upon Buggs' retrial. *See id.* at 82. We now turn to Indiana's Double Jeopardy Clause.

Buggs asserts that his retrial on murder and attempted robbery after his acquittal on felony murder and conspiracy to commit robbery violates the actual evidence test as first articulated in *Richardson v. State*, 717 N.E.2d 32 (Ind.1999). In essence, Buggs claims that murder and attempted robbery are the "same offense" as felony murder, of which he was acquitted.

In *Richardson*, the Indiana Supreme Court held that two offenses are the "same offense" in violation of the Indiana Double Jeopardy Clause if, "with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson*, 717 N.E.2d at 49. To show that two challenged offenses constitute the

same offense under the actual evidence test, "a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.* at 53. Our Supreme Court has since clarified:

> The language expressing the actual evidence test explicitly requires evaluation of whether the evidentiary facts used to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. The test is not merely whether the evidentiary facts used to establish one of the essential elements of one offense may also have been used to establish one of the essential elements of a second challenged offense. In other words, under the *Richardson* actual evidence test, the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense.

*Spivey v. State*, 761 N.E.2d 831, 832–33 (Ind.2002).

Both parties analyze the issue using the actual evidence test. However, neither of the parties cite to any case where an Indiana appellate court has applied the actual evidence test to the situation before us.[5] In fact, our Supreme Court has made

---

5. In his brief, Buggs asserts:

> Most double jeopardy claims, and most of Indiana's reported cases, result from defendants challenging two convictions, not retrial after an acquittal. However, our Constitution prohibits, "reprosecution of a defendant after an acquittal" and the same tests apply in both situations for determining what constitutes the "same offense."

*Johnson v. State*, 774 N.E.2d 1012, 1014 (Ind.Ct.App.2002).

Appellant's Br. p. 16. Although the Indiana Constitution undoubtedly prohibits reprosecution for the same offense after an acquittal, *Johnson* does not stand for the proposition that the actual evidence test is used to determine whether two offenses are the same offense. Rather, the issue in *Johnson* was whether the defendant's actions in resisting

no indication that the actual evidence test is even used to determine whether two offenses are the same offense when there is an acquittal on one offense and retrial on another offense. Perhaps this is because there is already a recognized doctrine that applies to this situation, namely, collateral estoppel. Because of the availability of doctrine of collateral estoppel, we choose not to extend the *Richardson* actual evidence test to this situation.

■■■ Collateral estoppel is not the same as double jeopardy; rather, it is embodied within the protection against double jeopardy. *Segovia v. State*, 666 N.E.2d 105, 107 (Ind.Ct.App.1996). "[T]he traditional bar of jeopardy prohibits the prosecution of the crime itself, whereas collateral estoppel, in a more modest fashion, simply forbids the government from relitigating certain facts in order to establish the fact of the crime." *Id.* (quotation omitted). In order to apply the doctrine of collateral estoppel, the court must engage in a two-step analysis: (1) determine what the first judgment decided and (2) examine how that determination bears on the second case. *Id.* Determining what the first judgment decided generally involves an examination of the record of the prior proceedings including the pleadings, evidence, charge, and any other relevant matters. *Id.* Then, the court must decide whether a reasonable jury could have based its verdict upon any factor other than the factor of which the defendant seeks to foreclose consideration. *Id.* If the jury could have based its decision on another factor, collateral estoppel does not bar relitigation. *Id.*

Buggs asserts that his acquittal on felony murder precluded the State from retrying him on murder and attempted robbery. We therefore are not concerned with the effect of his acquittal on conspiracy to commit robbery. In order to determine what the jury in Buggs' first trial decided does not require us to examine the entire record of that trial. Rather, we can make this determination based solely upon the charging information. Specifically, the amended charging information for murder alleged that Buggs intentionally killed Moore, and the amended charging information for felony murder alleged that Buggs killed Moore while committing or attempting to commit robbery. *See* Appellant's App. p. 211. Finally, the amended charging information for attempted robbery alleged that Buggs

> attempted to commit the crime of robbery; which is to knowingly or intentionally take property, United [S]tates currency or other personal property, from the person or presence of another person, Reginald Moore, by putting Reginald Moore in fear or by using or threatening the use of force on Reginald Moore, resulting in serious bodily injury to Reginald Moore, multiple stab wounds, by engaging in conduct which constituted a substantial step toward the crime of robbery; going to Reginald Moore's residence, and/or trying to gain entry to Reginald Moore's safe.

*Id.*

■■■ By acquitting Buggs of felony murder—which required a killing during the commission or attempted commission of robbery—but deadlocking on murder—which required an intentional killing—it becomes evident that the jury in the first trial did *not* decide that Buggs did not kill Moore. If the jury had believed that, it would have also acquitted him of murder. Therefore, collateral estoppel does not bar

---

two police officers could be separated by time and distance so as to constitute two distinct, separate offenses of resisting law enforcement, each tried in a different county.

relitigation of the issue of whether Buggs killed Moore.

 Rather, the more difficult question to answer is what did the jury in the first trial decide by acquitting Buggs of felony murder but deadlocking on attempted robbery and murder. After carefully analyzing this particular combination of acquittal and deadlocks, we find that the jury in the first trial could have only decided that Buggs did not kill Moore *while* committing or attempting to commit robbery. For if the jury decided that Buggs did not kill Moore, it would have acquitted him of murder. And if the jury decided that Buggs played no role in the attempted robbery, it would have acquitted him of that as well. We must now consider how this decision impacts Buggs' second jury trial.

Because the jury in the first trial decided that Buggs did not kill Moore *while* committing or attempting to commit robbery, collateral estoppel bars Buggs from being retried for attempted robbery *if* the attempted robbery occurred during the killing. Notwithstanding this bar, the State argues that Buggs' retrial was not prohibited because the attempted robbery did not occur during the killing; rather, "the jury could have found that Defendant did attempt to commit robbery *after* he had killed [Moore], as evidenced by Defendant's blood on Reginald's safe." [6] Appellee's Br. p. 7 (emphasis added) (record citation omitted). In fact, the amended charging information for attempted robbery alleged that one of the substantial steps was trying to gain entry to Moore's safe. However, for the reasons that follow, Buggs cannot be convicted of attempted robbery for attempting to rob Moore after killing him.

The Indiana Supreme Court addressed whether the evidence was sufficient to support the defendant's conviction for robbery where the evidence showed that the victim was dead at the time the defendant took the property from him in *Robinson v. State*, 693 N.E.2d 548 (Ind.1998). Our Supreme Court first noted that the crime of robbery is defined as the knowing or intentional taking of property from another person or from the presence of another person by using or threatening the use of force on any person or by putting any person in fear. *Id.* at 554 (citing Ind.Code § 35–42–5–1). The court concluded that the record contained "abundant evidence that the taking of [the victim's] property was effectuated by the use of force against him while he was still alive. That [the defendant] waited until after [the victim's] death actually to take the property is of no moment." *Id.* The court added, "The spirit of our criminal law would not be fostered by a ruling that [the defendant] could not be convicted of robbing a man he had just killed." *Id.* at 554 n. 2.

 Although at first blush this case appears to support the State's position, we first point out what our Supreme Court did *not* decide in *Robinson*. It did not rule that the entire robbery could be committed after the victim was dead. Rather, the court ruled that the taking could occur after the victim's death if the force occurred while the victim was alive. Here, the jury in the first trial decided that Buggs did not kill *while* committing or attempting to commit robbery; therefore, the jury must have believed that the robbery did not even begin until *after* Moore's

---

6. We note that the State does not argue that the attempted robbery occurred *before* the killing. This is presumably because the State alleged in the amended charging information that the same stabbing supported both the killing and the serious bodily injury element of attempted robbery. *See* Appellant's App. p. 211.

death. However, a person cannot begin and then complete a robbery on a dead person.

While most situations are like those found in *Robinson*—that is, where part of the robbery occurs before the victim's death and the other part occurs after the victim's death—the situation here is rare and quite unique given the first jury's complicated combination of acquittal and deadlocks. And while we wholeheartedly follow the dictates of *Robinson,* that case simply does not apply here where a jury has already decided that Buggs did not kill *while* committing or attempting to commit robbery.

In sum, although collateral estoppel did not prevent the State from retrying Buggs for an attempted robbery that occurred after Moore's death, it is simply not possible for a defendant to commit all of the elements of attempted robbery on a person who is already dead. We therefore reverse Buggs' conviction for attempted robbery.[7]

## II. Sentence

■ Buggs next contends that his sixty-five-year sentence is inappropriate and disproportionate when compared to Medley's sixty-year sentence. Essentially, Buggs claims that Medley is to blame for the murder and therefore his sentence should be less than hers.

■ Indiana Rule of Appellate Procedure 7(B) states: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." "Although appellate review of sentences must give due consideration to the trial

court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied." *Purvis v. State,* 829 N.E.2d 572, 587 (Ind. Ct.App.2005) (internal citations omitted), *trans. denied, petition for cert. filed* (U.S. Jan. 9, 2006) (No. 05–8651).

As for the nature of the offense, Buggs asserts that he never would have gone to Moore's apartment that night had it not been for Medley. He also claims that stabbing "is not an unusual form of murder. Homicide is always ugly . . . ." Appellant's Br. p. 22. The trial court described the nature of the offense as follows:

This was a totally unprovoked crime. Mr. Moore was in his home, minding his own business. He was set up by Ms. Medley—Ms. Medley. This was not your battle. You had—you didn't know the man. You had no reason to want to hurt this man, but you were—I guess you were in the clutches or . . . so much in need of drugs or whatever, that you went there with Ms. Medley, and you participated in this crime. This is one of the most brutal and heinous murders that I've seen in the nine years that I've been presiding judge in a major felony court. And an additional four years when I was the commissioner. The way you brutalized that man's body. His intestines were on the outside laying on the—on the floor. There were at least 22—and I believe there may have been 27 stab wounds all over the man's body. There was a final death kill into his throat where his whole neck is slashed open. It was horrible and horrific, the

---

7. In light of this conclusion, we do not address Buggs' argument that the trial court should have reduced his attempted robbery conviction to a Class C felony instead of to a Class B felony.

manner of death that Mr. Moore suffered.

Tr. p. 287–88. Although Medley was undoubtedly the instigator and facilitator of the murder, Medley brought Buggs with her that night solely because he offered force. In fact, Buggs, who did not even know Moore much less have a reason to harm him, is the one who brought the knife with him. It is evident that Buggs went on his own free will. In addition, contrary to Buggs' assertion, there is nothing usual about this particular stabbing. In the words of the trial court, Moore's body was brutalized.

Buggs' character is that of a long-time drug user. Although he was only twenty-two years old at the time of the murder, Buggs had two prior drug convictions, one a felony and the other a misdemeanor. And on the night of the murder, Buggs had been consuming both alcohol and drugs. The record shows that Buggs had a difficult childhood, marked by physical abuse from his stepfather and temporarily living in shelters with his mother, and the trial court found this to be mitigating. However, the record also shows that Buggs' sister, who grew up with him, graduated from college and works at Boeing.

After due consideration of the trial court's decision, we cannot say that Buggs' sixty-five-year sentence for murder is inappropriate in light of the nature of his offense and his character. And given that Buggs was the one who brutalized Moore's body by stabbing him over twenty-two times, his sentence is not disproportionate when compared to Medley's sixty-year sentence. *See Holden v. State,* 815 N.E.2d 1049, 1060 (Ind.Ct.App.2004) (noting that the defendant's sentence was not disproportionate to his co-defendants' sentences because they pled guilty and cooperated with the State), *trans. denied.*

## III. Change of Judge

 Last, Buggs contends that the trial court erred in denying his Criminal Rule 12(B) motion for change of judge. Specifically, Buggs argues that the trial judge's characterization of him as Medley's "hit man companion" during Medley's 2002 sentencing hearing prejudiced him.

 Criminal Rule 12(B) provides:

In felony and misdemeanor cases, the state or defendant may request a change of judge for bias or prejudice. The party shall timely file an affidavit that the judge has a personal bias or prejudice against the state or defendant. The affidavit shall state the facts and the reasons for the belief that such bias or prejudice exists, and shall be accompanied by a certificate from the attorney of record that the attorney in good faith believes that the historical facts recited in the affidavit are true. The request shall be granted if the historical facts recited in the affidavit support a rational inference of bias or prejudice.

The ruling on a motion for change of judge is reviewed under the clearly erroneous standard. *Garland v. State,* 788 N.E.2d 425, 432 (Ind.2003); *Sturgeon v. State,* 719 N.E.2d 1173, 1182 (Ind.1999). Reversal requires a showing that leaves us with a definite and firm conviction that a mistake has been made. *Sturgeon,* 719 N.E.2d at 1182.

 The law presumes that a judge is unbiased and unprejudiced. *Garland,* 788 N.E.2d at 432. "A showing of prejudice that calls for a change of judge must be established from personal, individual attacks on a defendant's character, or otherwise." *Id.* As our Supreme Court stated in *Sturgeon:*

With regard to comments made in response to information learned in judicial

proceedings, the U.S. Supreme Court has stated:

> [J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, ... the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).

*Sturgeon,* 719 N.E.2d at 1181–82.

Here, the record shows that the same judge presided over Medley's and Buggs' trials. During Medley's 2002 sentencing hearing, which was approximately two years before Buggs' first trial and three years before Buggs' second trial, the trial court made the following comment:

> There is no excuse whatsoever for your complete lack of respect for another life. This was a crime of—completely of greed. For no other reason. No passion. No provocation. Completely greed. So that you and your hit man companion could collect money for your drug business.

Appellant's App. p. 170–71.

In 2004, Buggs filed a Motion for Change of Judge and an Affidavit of Counsel alleging that the trial court's "characterization [of him] during Natalie Medley's sentencing hearing may prejudice the Defendant's ability to obtain a fair and impartial trial." *Id.* at 166. The trial court issued an order denying this motion; however, Buggs did not include this order in the record on appeal, hampering our review of this issue. In any event, Buggs quotes from the trial court's order denying his motion for change of judge. According to Buggs, the trial court's order provides that the motion is denied because, "The Court at no time stated or referred to Marshaun Buggs as being Ms. Medley's accomplice or 'hitman companion.'" *Id.* at 205 (punctuation omitted). Just before trial, Buggs filed a Renewed Motion for Change of Judge and Affidavit of Counsel, which the trial court also denied.

The historical facts presented by Buggs do not support a rational inference of the trial judge's bias or prejudice. The trial judge's comments at Medley's sentencing hearing did not specifically reference Buggs and merely constituted a characterization of the evidence presented at her trial. The comments also did not indicate that the trial judge had reached a conclusion about the merits of Buggs' case. Further, the fact that the trial judge presided over Medley's trial and heard evidence involving Buggs does not, in itself, raise an inference of bias or prejudice. *See Sturgeon,* 719 N.E.2d at 1182. The trial judge's decision to deny Buggs' motion for change of judge was not clearly erroneous.

Affirmed in part and reversed in part.

ROBB, J., and MATHIAS, J., concur.