# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**RANDY A. ELLIOTT**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Mar 28 2012, 8:19 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JUAN M. GARRETT, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1107-PC-410 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kurt M. Eisgruber, Judge
The Honorable Steven J. Rubick, Magistrate
Cause No. 49G01-0706-PC-120521

**March 28, 2012**

**OPINION - FOR PUBLICATION**

**BARTEAU, Senior Judge**

Juan M. Garrett appeals from the denial of his petition for post-conviction relief. He contends that his trial counsel and direct appeal counsel provided ineffective assistance by failing to challenge alleged violations of the prohibition against double jeopardy under the federal and state constitutions. We affirm.

## ISSUE

Garrett raises one issue, which we restate as: whether Garrett received ineffective assistance of trial and direct appeal counsel.

## FACTS AND PROCEDURAL HISTORY

The facts of this case, taken from this Court's memorandum decision in Garrett's direct appeal, are as follows:

> Early in the morning of June 9, 2007, A.W. reported to the police that three men forced her into a van, took her to an apartment, and forced her to submit to multiple acts of oral sex and vaginal intercourse. One of the perpetrators gave her a piece of paper with the name "Juan" and a phone number written on it. He told her "to call him again if [she] wanted to have a good time again." (Tr. at 368.) A.W. showed an officer the location of the apartment where she had been raped.
> Police discovered the phone number and apartment belonged to Garrett. On June 25, 2007, Garrett went to the Sex Crimes Office and was interviewed by Detective Linda White and Sergeant Craig McCartt. Detective White gave Garrett *Miranda* warnings, which Garrett said he understood. She then read him an advice of rights form, which he said he understood and signed.
> Garrett told the officers he had called off work on the evening of June 8 because he was sick, but he then went to the Embassy Suites for off-track betting. He claimed he returned home around 9:00 and went straight to bed. He denied that anyone was at his apartment that evening. When confronted with the note, Garrett said, "I meet a lot of people on the bus downtown. I have no idea from there." (State's Ex. 8 at 8.) Detective White asked Garrett if he would give a buccal swab, but Garrett refused.

2

Garrett's DNA was later obtained by court order, and his DNA matched a sample from A.W.'s rape examination. Detective White showed A.W. a photographic array, and A.W. identified Garrett as one of the perpetrators.

On June 27, 2007, Garrett was charged with Count 1, Class A felony rape (alleging he raped A.W. while armed with a knife); Count 2, Class A felony rape (also alleging he raped A.W. while armed with a knife); Count 3, Class B felony criminal deviate conduct; Count 4, Class B felony criminal confinement (alleging he confined A.W. in an apartment while armed with a knife); and Count 5, Class C felony criminal confinement (alleging he forced A.W. into a vehicle). The case was tried to a jury on April 14, 2008. The jury found Garrett not guilty of Counts 1, 3, and 5, but it could not reach a verdict on Counts 2 and 4.

Counts 2 and 4 were retried to the bench on June 5, 2008. A.W. testified that on the evening of June 8, 2007, she ended up in an apartment with three men she did not know. One man was older, and two were younger. After they entered the apartment, one of the men locked the door. She did not want to be there. She begged them to let her go because she had a sick child at home and needed to take care of him. The men refused, and said they were "going to do things to" her, and she feared they were going to hurt or kill her. (Tr. at 361.)

The apartment was a one-room studio containing a bed and couch. One of the men pushed her onto the couch, and the two younger men sat down beside her. The older man sat down on the bed. The men started drinking and smoking marijuana. She did not want to drink, but they squeezed her jaw and poured alcohol into her mouth.

After a while, the men pulled her clothes off. A.W. was forced onto the bed:

Q. How did you get over to the bed?
A. I was pulled over to the bed and pushed down on the bed.
Q. All right. When you were pushed down onto the mattress, what man were you with?
A. The older one.
Q. When the older man pushed you down on the mattress, what happened?
A. He stuck his penis inside of me and had sex with me.
Q. When you say he stuck his penis inside of you, what part of you?
A. In my vagina.
Q. When he put his penis in your vagina, how did that feel?
A. I didn't like it. It hurt.

3

(*Id.* at 363–64, 366). A.W. identified Garrett as the man who had raped her. A.W. asked him to stop, but he did not.

While Garrett was having sex with her, she noticed a knife at the end of the bed. When he finished, he told her she could get dressed and leave. However, one of the younger men prevented her from leaving. She was finally allowed to leave after Garrett had sex with her again. Garrett gave her his phone number, and she also took the knife when he was not paying attention.

A.W. ran to a gas station down the street and called 911. A.W. gave the police the note and the knife and showed them where the apartment was. She was then taken to a hospital for an examination. The nurse testified A.W. "was tearful, upset, she was cooperative with me, but very uncomfortable, having some pain, rated I believe a 9 out of 10." (*Id.* at 392.) A.W.'s injuries included a chipped tooth, a hemorrhage in her eye, and bruises on several parts of her body.

The trial court found Garrett guilty of rape as a Class B felony, because A.W. had testified she had not seen anyone touch the knife. The trial court found him not guilty of criminal confinement, because A.W. testified one of the other men had prevented her from leaving after Garrett had sex with her.

*Garrett v. State*, No. 49A02-0807-CR-609, slip op. at 2-5 (Ind. Ct. App. Feb. 25, 2009) (footnotes omitted), *trans. denied*. Garrett appealed, challenging the admissibility of his statements to the police and the sufficiency of the evidence. This Court affirmed his conviction. *See id.* at 9.

Next, Garrett filed a petition for post-conviction relief. After an evidentiary hearing, the post-conviction court issued findings of fact and conclusions of law denying Garrett's petition. This appeal followed.

<u>DISCUSSION AND DECISION</u>

In reviewing the judgment of a post-conviction court, appellate courts consider only the evidence and reasonable inferences supporting the judgment. *Hall v. State*, 849 N.E.2d 466, 468 (Ind. 2006). To prevail on appeal from the denial of post-conviction

4

relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court. *Id.* at 469. Where, as here, the post-conviction court enters findings and conclusions in accordance with Indiana Post-Conviction Rule (1)(6), we will reverse upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made. *Id.*

In this case, Garrett contends that his trial counsel, Melissa Perez, should have filed a motion to dismiss the second rape charge prior to his retrial or should have objected to the charge during retrial. He also contends that his direct appeal counsel, Julie Ann Slaughter, should have argued that his retrial on the second rape charge was impermissible. Specifically, Garrett contends that his retrial and subsequent conviction on the second rape charge violated his federal and state constitutional protections against double jeopardy, and his attorneys were ineffective for failing to raise these claims.

To establish a claim of ineffective assistance of trial counsel, a defendant must demonstrate that counsel performed deficiently and the deficiency resulted in prejudice. *Lee v. State*, 892 N.E.2d 1231, 1233 (Ind. 2008) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). To establish the first element, the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the "counsel" guaranteed by the Sixth Amendment. *Henley v. State*, 881 N.E.2d 639, 644 (Ind. 2008). To establish the second element, the defendant must show prejudice: a reasonable probability (i.e., a probability sufficient to undermine confidence

5

in the outcome) that, but for counsel's errors, the result of the proceeding would have been different. *Id.* Counsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption. *Ritchie v. State*, 875 N.E.2d 706, 714 (Ind. 2007).

The standard of review for a claim of ineffective assistance of appellate counsel is the same as for trial counsel in that the defendant must show that appellate counsel was deficient in his or her performance and that the deficiency resulted in prejudice. *Henley*, 881 N.E.2d at 644. Ineffective assistance of appellate counsel claims fall into three categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Carter v. State*, 929 N.E.2d 1276, 1278 (Ind. 2010).

We choose to resolve this appeal by addressing whether Garrett was prejudiced by his attorneys' failure to present his double jeopardy claims. If we can resolve an ineffective assistance claim on the question of prejudice, we need not address whether counsel's performance was deficient. *Helton v. State*, 907 N.E.2d 1020, 1023 (Ind. 2009).

We begin with the federal double jeopardy clause. The Fifth Amendment to the United States Constitution provides, in relevant part, that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." Federal double jeopardy jurisprudence bars a defendant from being prosecuted for an offense after being acquitted for the same offense. *Griffin v. State*, 717 N.E.2d 73, 77 (Ind. 1999). When an appellant alleges a federal double jeopardy clause violation, we consider whether each statutory

provision at issue requires proof of an additional fact which the other statutory provision does not. *McIntire v. State*, 717 N.E.2d 96, 98 (Ind. 1999).

In *Griffin*, a jury acquitted Griffin of felony murder by robbery and deadlocked on charges of robbery and conspiracy to commit robbery. The State retried Griffin on the robbery and conspiracy charges, and the jury found him guilty of both charges. On appeal, Griffin contended that retrial on the robbery charge violated the federal double jeopardy clause because the robbery was the underlying offense for his felony murder charge, so an acquittal on one charge was, in essence, an acquittal on both. Our Supreme Court determined that the felony murder by robbery charge and the robbery charge required proof of the same facts and constituted the "same offense." *Id.* at 78. However, the Court noted that in order to acquit Griffin of felony murder by robbery, the jury did not necessarily have to conclude that the State failed to prove the underlying felony of robbery. Furthermore, Griffin's constitutional jeopardy under the robbery charge was merely suspended because of mistrial, and the jeopardy continued upon retrial rather than constituting a separate jeopardy. Thus, Griffin was not placed in jeopardy twice for the same offense, and his retrial and conviction did not violate the federal double jeopardy clause.

In the current case, Garrett's two rape charges necessarily have the same statutory elements and do not require proof of different facts. Thus, they appear to be the same offense for the purposes of the federal double jeopardy clause. Nevertheless, "the 'same offense' issue is only one aspect of double jeopardy jurisprudence." *Id.* at 78. A retrial following a hung jury does not violate the federal double jeopardy clause. *Id.* at 79.

7

When the jury acquitted Garrett of one of the rape charges, it did not necessarily conclude that the other rape charge was also unproven. In addition, if the State had failed to prove the rape charge against Garrett on retrial, we presume that the trial court, as the finder of fact, would have reached a verdict of acquittal. *See id.* at 81 (presuming that the jury would have voted to acquit, rather than deadlock, on a charge of robbery if the State had failed to carry its burden of proof where the jury had previously acquitted the defendant of felony murder). Furthermore, as was the case in *Griffin*, Garrett was not put in jeopardy twice. Rather the jeopardy began when the rape charges were filed and continued through his retrial. Consequently, we conclude that the retrial of the second rape charge did not violate Garrett's Fifth Amendment protection against double jeopardy.

Turning to Garrett's double jeopardy claim under the Indiana Constitution, Article 1, Section 14 provides: "No person shall be put in jeopardy twice for the same offense." Indiana's double jeopardy clause was intended to prevent the State from being able to proceed against a person twice for the same criminal transgression. *Nicoson v. State*, 938 N.E.2d 660, 662 (Ind. 2010). Two or more offenses are the same offense if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. *Sloan v. State*, 947 N.E.2d 917, 924 (Ind. 2011).

The "statutory elements" test is the same as the analysis required by federal double jeopardy clause jurisprudence. *See Brown v. State*, 912 N.E.2d 881, 896 (Ind. Ct. App.

8

2009) (asserting that the statutory elements test is identical to the standard set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 2d 321 (1932)), *trans. denied*. Having determined that Garrett's retrial did not violate the federal double jeopardy clause, we also conclude that the retrial did not violate the statutory elements test of the Indiana double jeopardy clause.

The second element of Indiana's double jeopardy clause analysis is the "actual evidence" test. To show that two challenged offenses constitute the same offense under the actual evidence test, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. *Vestal v. State*, 773 N.E.2d 805, 806 (Ind. 2002). Application of this test requires the court to identify the essential elements of each of the challenged crimes and to evaluate the evidence from the fact-finder's perspective. *James v. State*, 953 N.E.2d 1191, 1194 (Ind. Ct. App. 2011).

Based on this Court's precedent, we conclude that the actual evidence test does not apply to this case. In *Buggs v. State*, 844 N.E.2d 195, 198 (Ind. Ct. App. 2006), *trans. denied*, the State charged Buggs with murder and felony murder, among other charges, arising out of one act of murder. The jury acquitted Buggs of felony murder and could not reach a verdict on the murder charge. The State retried Buggs on the murder charge, and the jury convicted him. On appeal, Buggs argued, among other claims, that his retrial violated Indiana's prohibition against double jeopardy because the felony murder and murder charges were the same offense and violated the actual evidence test. A panel

9

of this Court noted that no Indiana appellate court has applied the actual evidence test where there is an acquittal on one charge and retrial on another charge after a hung jury. This Court further noted, "our Supreme Court has made no indication that the actual evidence test is even used to determine whether two offenses are the same offense when there is an acquittal on one offense and retrial on another offense." *Id.* at 201-02. Therefore, this Court concluded that the doctrine of collateral estoppel, rather than the actual evidence test, is more appropriate in such situations.

In the current case, both parties discuss the actual evidence test, but neither cites to any appellate case where the actual evidence test has been applied to a case such as this. Furthermore, our Supreme Court has not indicated since the issuance of *Buggs* that the actual evidence test should be applied where the jury votes to acquit on one charge but deadlocks on another charge, and the defendant is retried on the deadlocked charge. Consequently, we choose not to apply the *Richardson* actual evidence test to this case and instead turn to the doctrine of collateral estoppel.

The doctrine of collateral estoppel, or in modern usage, issue preclusion, provides that when an ultimate issue of fact has been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. *Coleman v. State*, 946 N.E.2d 1160, 1164 (Ind. 2011). Collateral estoppel is not the same as double jeopardy, but rather it is embodied within the protection against double jeopardy. *Id.* at 1165. The traditional bar of double jeopardy prohibits the prosecution of the crime itself, whereas collateral estoppel, in a more modest fashion, simply forbids the government from relitigating certain facts in order to establish the fact of the crime. *Id.*

10

In essence, the doctrine of collateral estoppel precludes the government from litigating any issue that was necessarily decided by a jury's acquittal in a prior trial. *Id.* To decipher what a jury necessarily decided in a prior trial, courts should examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration. *Id.*

In this case, the charging information describes both counts of rape identically, as follows:

> On or about June 9, 2007, Juan Garrett did knowingly have sexual intercourse with [A.W.], a member of the opposite sex, when [A.W.] was compelled by force or the imminent threat of force, and further said act was committed while armed with a deadly weapon, that is: a knife.

Appellant's Direct Appeal App. p. 28. The probable cause affidavit that accompanied the information clarified that Garrett allegedly raped the victim twice during their encounter. Next, in its instructions to the jury on the rape charges during the first trial, the trial court stated identical elements for each charge:

> That the defendant, Juan Garrett, on or about June 9, 2007,
> 1.   did knowingly
> 2.   have sexual intercourse with [A.W.], a member of the opposite sex,
> 3.   when [A.W.] was compelled by force or imminent threat of force,
> 4.   and further said act was committed while armed with a deadly weapon, that is: a knife . . . .

*Id.* at 73-75.

At the first trial, the victim testified that Garrett raped her twice during their encounter. Specifically, she stated that after Garrett and his accomplices forced her to

11

drink alcohol and removed her clothes, Garrett bent her over a mattress and forced his penis into her vagina. Next, as the victim gathered her clothing and attempted to leave, one of Garrett's accomplices stopped her from leaving and raped her. Subsequently, Garrett sent the other man outside to find Garrett's mobile phone, forced the victim back onto the mattress, and again forced his penis into her vagina. During closing statements, the prosecution argued to the jury that Garrett committed two separate rapes upon the victim.

The jury heard evidence that two rapes occurred, and its verdict of acquittal on one charge does not give rise to a conclusion that the jury decided that the other rape did not occur. If the jury had concluded that the State had failed to prove that neither rape occurred, then it would have acquitted Garrett of both charges of rape. Thus, a rational jury could have grounded its vote to acquit on one count of rape on issues unrelated to the second rape charge. We conclude that collateral estoppel did not bar relitigation of the second count of rape.

Garrett cites *Brinkman v. State*, 57 Ind. 76 (1877), to support his Indiana double jeopardy claim, but that case is factually distinguishable. In that case, Brinkman was convicted in separate trials of charges of selling intoxicating liquor to a minor. Our Supreme Court concluded that one of the convictions could not stand because the same evidence could have been used to convict Brinkman in both cases. By contrast, in this case the doctrine of collateral estoppel is applicable rather than the "actual evidence" test. Furthermore, unlike the appellant in *Brinkman*, Garrett was acquitted of one charge and

12

convicted of the second charge upon retrial, rather than being convicted of both offenses. Consequently, *Brinkman* is not controlling.

Because Garrett's double jeopardy claims are without merit, he was not prejudiced by his trial and direct appeal attorneys' failure to raise these claims. For these reasons, we are not left with a definite and firm conviction that the post-conviction court has made a mistake.

<u>CONCLUSION</u>

For the reasons stated above, we affirm the judgment of the post-conviction court.

Affirmed.

FRIEDLANDER, J., and BROWN, J., concur.

13